## The Continental Divide Mining Investment Company. v. Bliley.

1. PLEADING IN ACTIONS FOR ACCOUNTING.

A complaint in an action for an accounting between partners is not defective because of an omission to aver the plaintiff's willingness to pay any balance that may be found against him.

2. MINING PARTNERS.

Mining partners were engaged in operating leased property. Before the expiration of their term all of the parties in interest, except the appellee, surrendered the lease for cancellation; and at the same time the mine owners made a new lease of the property to one of the original lessees, by whom the mining operations were carried on until a time when it conveyed the leasehold, etc., to a new corporation. *Held*, that the new lease so inured to the benefit of the appellee that his interests were extended and continued under the new arrangement.

3. SAME—FORFEITURE.

The mere fact that a member of a mining partnership engaged in operating leased mines has failed for a period of ninety days to pay his proportion of the expenses does not work a forfeiture of his interest in the copartnership.

4 MEASURE OF DAMAGES—CONVERSION OF STOCK.

It seems that for a conversion of stock, its market value at the time of conversion, with legal interest, is the measure of damages.

*Appeal from the District Court of Pitkin County.*

THIS action was instituted by appellee, Alexander Bliley, against The Continental Divide Mining Investment Company for an accounting of a mining partnership between appellant, appellee and others, in a lease and option to purchase certain mining property in Roaring Fork mining district, Pitkin county, Colorado.

In the winter of '87 and '88, one B. Clark Wheeler was in possession of the Bushwhacker and Alpine lode mining claims, under a lease from the then owners of the property. This lease, by its terms, was to expire on the 10th day of September, 1887; but before the appellee acquired any rights in it, it was amended so as to run for six months after the discovery of pay ore in the property. Sometime in 1888, The Continental Divide Mining Investment Company, the present appellant, was organized as a corporation by Mr. Wheeler, who was, at all times hereinafter mentioned, its president and general manager.

In March, 1888, Mr. Wheeler conveyed to this corporation the lease in question, and all his right, title and interest in the properties covered by the lease. Thereafter, and on the 28th day of April, 1888, appellant conveyed to appellee a one fiftieth (1/50) interest in the Alpine and Bushwhacker mining claims and a one thirty-second (1/32) interest in other properties. This transaction was witnessed by the following written instrument, which was duly recorded:

" This assignment of interest in bond and lease made this 28th day of April, A. D. 1888, between The Continental

Divide Mining Investment Company, of the first part, and Alex. Bliley, of the second part,

" Witnesseth : That the said party of the first part, for and in consideration of the sum of seven hundred dollars to it paid by the said party of the second part, the receipt whereof is hereby acknowledged, has sold and assigned to said party of the second part an undivided one thirty-second interest in a certain lease and bond on the Iowa, Jophlin and Cascade claims, made April 8th, 1887, by John Harkins et al. to Vincent Johnson, and an undivided one fiftieth interest in a certain lease and bond on the Alpine and Bushwhacker lode mining claims, made _____, 1887, by W. E. Stone et al. to B. Clark Wheeler.

" Signed, sealed and delivered on the day first above written."

The appellant, with appellee and other parties, continued work under the lease until the 20th day of August, 1889, when pay ore was discovered in the property. Ore to the value of $40,000 was taken out and marketed between the date of discovery and the first of the succeeding month of April. In December, 1889, when the lease, by its terms, had several months yet to run, the appellant, together with all other parties interested in the lease, except appellee, surrendered up said lease for cancellation ; and on the same day the owners of the property made a new lease for the term of six months to The Continental Divide Mining Investment Company alone. This company continued to extract ore from the property until the month of April following, when The Bushwhacker Mining Company was organized by Mr. Wheeler and others, to which company appellant conveyed the lease, leasehold and all other interests held by it in the Bushwhacker and Alpine claims.

The Bushwhacker Mining Company was capitalized at 2,000,000 shares, of the par value of one dollar per share. One million six hundred and ninety thousand shares of this stock were named in the instrument as the consideration for

the conveyance from The Continental Divide Mining Investment Company, as aforesaid. Of this amount, 1,090,000 shares were given to the other parties, or used as treasury stock, leaving a balance of 600,000 shares to the grantor.

It appears that appellee paid his share of all expenses incurred in the operation of the properties, under the lease, until sometime in the month of June, 1889; but from June until August 20th—the date when pay ore was discovered—appellee was in default. Upon these facts the court found that a partnership existed between the parties, and ordered an accounting. The referee appointed to take the account found that the amount of cash received from sales of ore and sales of the property balanced the disbursements made by appellant under the lease, and the amount paid as the purchase price under the various bonds and options. The referee further found that the Bushwhacker stock received by appellant was the profits of the partnership. This amounted to 600,000 shares, of which one fiftieth, or 12,000 shares, was found to be the property of appellee. No demand having been made for this stock prior to the institution of this suit, the commencement of the action was treated by the district court as such a demand, and the conversion of the stock fixed as of April, 1891.

Upon evidence adduced, the referee found the market value of the stock at thirty-five cents per share. He further found that appellee had expended $105, which amount he was entitled to recover. On these findings final judgment was rendered for the sum of $4,305. To reverse this judgment, the cause is brought here by appellee.

Mr. WILLIAM O'BRIEN, for appellant.

Messrs. DOWNING, STIMPSON and McNAIR, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

There are thirteen assignments of error in the record. Following the order of the argument of counsel, we shall first

consider the last assignment of error, to wit, that the amended complaint does not state facts sufficient to constitute a cause of action.

The particular defect pointed out is the omission of an allegation to the effect that plaintiff offered to pay his one fiftieth part of the purchase price fixed by the bond for the transfer of the property to defendant. It appears to have been, at one time, necessary in a suit for an accounting between partners to state in the bill an offer on the part of the plaintiff to do equity, in the nature of an averment of his willingness to pay any balance that might be found due the defendant from him; but under our practice, a bill is not defective because such an averment is omitted. *Craig v. Chandler*, 6 Colo. 543.

The first, second and third assignments of error are next argued by counsel. These assignments of error bring up for review the ruling of the district court in rejecting certain evidence offered for the purpose of showing that the new lease and bond were made with The Continental Divide Mining Investment Company upon an independent consideration. The offer embraced proof that the lessors had claimed a forfeiture of the prior lease and bond by reason of an alleged failure of the lessee and his assigns to comply with the terms and conditions of such instruments.

The evidence shows that the plaintiff and defendant occupied the relation of mining partners to each other. They had together operated the lease, appellee contributing from time to time his proportion of the expense of the same. The principle which requires mining partners to exercise the utmost good faith in their dealings *inter sese* must be applied to the surrender of the old lease, and the execution of the new one. The old lease had not expired at the time the new lease was executed. In these circumstances, the law regards the new lease as a continuation of, or as "grafted on," the old lease; and we think the district court correctly decided that appellee's interests continued under the new lease. *Meagher v. Reed*, 14 Colo. 335; 2 Pom. Eq. Juris., sec. 1050;

*Clegg v. Fishwick*, 1 McNaughton & Gordon, 298; *Mitchell v. Reed*, 61 N. Y. 129; 1 Bates on Partnerships, sec. 305.

The defendant offered to prove at the trial that for a period of about three months the plaintiff failed to pay his proportion of the expenses of working the lease. This offer was made for the purpose of showing a forfeiture of his interests in the lease; but we know of no principle of law that would visit such a result upon a copartner. It is not claimed that any proceedings were taken to have a forfeiture declared, and certainly the fact that plaintiff failed to pay for a period of ninety days his proportion of the expenses did not work a forfeiture of his interest in the copartnership. *Meagher v. Reed, supra.*

The referee found that the expenses of operating the mine under the lease, with salary of officers, etc., balanced the receipts, leaving a new profit to the partnership of the 600,000 shares of Bushwhacker stock as the net consideration for the sale to that company. One fiftieth part of this was found to belong to appellee.

Objection is made to the nature of the evidence by which the value of the stock is shown, and also to the time fixed as the date of the conversion, this being the time to which the evidence of value is directed. There is some conflict in the evidence as to the value of this stock, but it is not contended that we should review the evidence for the purpose of substituting the judgment of this court for that of the referee and of the district court upon the weight of such evidence. To establish the value of this stock, plaintiff introduced a number of stockbrokers, who were actively engaged in that business at the town of Aspen in the month of April, 1891, this place being the nearest business place to the mines. These stockbrokers were allowed to introduce their books, showing sales made by them during the month of April, 1891. With one firm the sales recorded were four in number, and with the other, twenty-one. These sales were made in the open market, at various times during the month, the price of the stock varying from 34 to 36 cents per share. This evi-

dence was not only competent, but the best evidence of value that could be obtained. The sales were made in blocks of from 100 to 5,000 shares, in the ordinary course of business, and furnish competent evidence of the value of the stock.

It was directed to the value of the stock in April, 1891, upon the theory that the conversion was made at that time. The following rules as to the measure of value of stock unlawfully converted have been announced from time to time in different jurisdictions:

1. The market value of the stock upon the day of the conversion, to wit, the time when the owner, being entitled to immediate possession of the stock, demands the same, and is refused.

2. In England and in some American states, the correct measure of damages has been declared to be the value of the stock at the time of the trial.

3. The rule in a few jurisdictions has been held to be the highest market value of the stock between the date of the conversion and the time of the trial.

Each of these several rules finds support in the opinions of courts of last resort under varying circumstances; but the tendency of modern decisions has been in support of the rule fixing the measure of damages at the value of the stock at the time of the conversion, with legal interest added. Cook on the Law of Stock and Stockholders, sec. 581, *et seq.*

Perhaps exceptions to the rule should be allowed in some cases, but in this instance the rule adopted is as favorable to the appellant as the law will warrant. It is not only supported by the weight of authority, but is founded upon sound reason. When a demand is made for stock, the party holding it is given notice of the claim, and he is presumably aware of the value of the stock at that time, and knows the extent of his liability in case his refusal to deliver the stock is unwarranted. In this case suit was commenced and summons served in the month of April, 1891. There being no other demand for this stock, and no unreasonable delay in

bringing suit, the commencement of the action was properly taken as the time of the conversion.

Finding no error in the record, the judgment of the district court will be affirmed.

*Affirmed.*