## No. 11,926.

### Ellis *v.* Colorado National Bank, et al.

Decided July 2, 1928.

Mr. Gilbert A. Walker, Messrs. Melville, Melville & Temple, for plaintiff in error.

Messrs. Bartels & Blood, Mr. A. H. Laws, Messrs. Gooding & Monson, for defendants in error.

*Department One.*

Mr. Justice Burke delivered the opinion of the court.

These parties appear here in the same order as in the trial court. Ivy May Ellis, plaintiff's wife (now deceased), is hereinafter referred to as Mrs. Ellis; William A. McKinlay (now deceased) as Mr. McKinlay; his widow, Dora K. McKinlay, defendant in error, as Mrs. McKinlay; the Colorado National Bank of Denver, defendant in error, as the bank; and Margaret E. Ellis, Ivy Katherine Ellis and Mary Jacqueline Ellis, defendants in error (minor children of plaintiff and Mrs. Ellis) as the minors. Mrs. McKinlay and defendant in error, Maude Keller, are sisters of Mrs. Ellis and aunts of the minors.

Plaintiff filed his complaint herein as a single cause of action. Defendants, contending that it contained many, filed motions to separately state and number. Those motions were sustained, except as to the first cause of action. Plaintiff elected to stand on his complaint and judgment of dismissal was thereupon entered against him. To review that judgment he prosecutes this writ.

The complaint tells, in substance, the following story: In January, 1914, plaintiff, then and long prior thereto a resident of Routt county, Colorado, became insane. At that time he was worth approximately $60,000, in real estate, live stock, money, etc. His business was taken over by Mrs. Ellis and her brother-in-law William A.

McKinlay. Taking advantage of the situation, they obtained, without consideration, a transfer of all of plaintiff's property, except his home in Steamboat Springs and some lots there, to Mrs. Ellis. In November, 1922, on the advice of McKinlay, Mrs. Ellis consulted with Bancroft about drawing her will, advising him in detail as to how all this property came to be in her name. Bancroft drew the document, naming the bank and William M. McKinlay as executors thereof, creating a testamentary trust, and naming said executors as trustees. This will was executed in the presence of said Bancroft and Maude Keller as witnesses and about two years later Mrs. Ellis died. The will was probated in the county court of Routt county without any notice to plaintiff and without his being represented, although his condition was well known to all those interested, and the property involved thus passed into the hands of the bank and Mr. McKinlay as executors. December 8, 1924, the estate was finally settled and Mr. McKinlay and the bank accepted their appointment as trustees under the will. An order of appointment was accordingly entered and the trustees filed an inventory of the property which they received as such. They paid out of the estate a total of $2,900, which included court costs, inheritance tax, and $2,000 compensation to themselves. In October, 1924, after the probate of the will, Mr. McKinlay induced plaintiff to deed to the bank, as trustee of the estate of Mrs. Ellis, his home in Steamboat Springs, on the pretext of saving trouble and expense in the event of the death of plaintiff and under the promise not to record the deed during his lifetime. After the death of Mr. McKinlay his widow caused the deed to be recorded and the home accordingly now stands in the name of the bank as trustee. In December, 1923, the bank, Bancroft and Mr. McKinlay caused a portion of plaintiff's real estate, for a nominal consideration, to be deeded to Maude Keller, and it still stands in her name. After the recording

of the last mentioned deed Mrs. McKinlay and Maude Keller moved into the Steamboat Springs home, taking charge thereof as well as charge of the minors. They still occupy that position, have alienated from plaintiff the affection of his children, prevent him from seeing them, refuse to allow him to live in peace in any portion of the house, and refuse to vacate. Under the terms of the testamentary trust plaintiff has no use of any of his property and can only obtain, through the bank, one-half of the net income, which at the present time amounts to approximately $50 per month. He alleges that he has no plain, speedy and adequate remedy at law, and prays that the probate proceedings in the county court be set aside; that the bank be required to account; that Mrs. McKinlay be required to account for the money wrongfully received by her deceased husband, and be required to vacate the Steamboat Springs home; and that Maude Keller also be required to account and vacate.

The motions were based upon the theory that the complaint contains the ten following causes of action: (a) The wrong of Mrs. Ellis and Mr. McKinlay in obtaining plaintiff's property; (b) the wrong of Mrs. Ellis in disposing of said property by will; (c) the wrongful probate of the will and settlement of the estate; (d) the wrongful conduct of Mr. McKinlay and the bank as executors and trustees; (e) the wrong of Mr. McKinlay in obtaining the deed to plaintiff's residence; (f) the wrong of Mr. McKinlay and the bank in making the deed to Maude Keller; (g) a cause of action against Bancroft and the bank for an accounting; (h) a cause of action against Mrs. McKinlay for an accounting of the sum paid her deceased husband; (i) a cause of action in ejectment against Mrs. McKinlay and Maude Keller; (j) a cause of action for the recovery by plaintiff of one-half the estate of Mrs. Ellis, assuming that title to the property disposed of by her will was legally in her at the time of her death.

Able arguments are presented by counsel for the respective parties and numerous authorities cited in support of their contentions. We think it unnecessary to review them. The statement of a few well established principles and the application thereof to the foregoing facts will, it seems to us, clearly demonstrate that this complaint states a single cause of action and that said motions should have been overruled.

1. Property obtained or withheld, as here charged, is impressed by equity with a constructive trust and the wrongdoer is required to account and return. 3 Pom. Eq. Juris. (4th Ed.) §§ 1044, 1047, 1048, 1052, 1053, 1058.

2. ''The one subject-matter of this suit is trust property * * *. The complaint recites but one connected history of the property * * *. It * * * comes down in one unbroken line through a series of acts on the part of the defendants which contributed to and culminated in the alleged injuries to plaintiffs. The defendants are shown to have a connected and common interest in the one subject-matter of the action [plaintiff's estate which was wrongfully appropriated] centering in the point in issue in the cause [plaintiff's insanity when his property was taken and disposed of]. Though the relief demanded is distinct, it is still but one subject-matter of action.'' *Walser et al. v. Moran,* 42 Nev. 111, 159, 180 Pac. 492.

3. Direct allegations of fraud are unnecessary if the facts stated constitute fraud. 27 C. J. p. 30, § 146; *Stimson v. Helps et al.,* 9 Colo. 33, 36, 10 Pac. 290.

4. The same is true of conspiracy. 12 C. J. p. 630, §§ 215, 216.

5. ''Specific acts done to effectuate the conspiracy may be set forth, and are not to be considered as constituting several causes of action, although they are different in their particular character, were done at different times, and defendants do not all claim to be interested in, or benefited by, each of them or in the same degree as to any of them.'' 12 C. J. p. 632, § 222.

6. "Every one who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance of it." 12 C. J. p. 612, § 181.

7. Where there are no responsive defendants, there is no cause of action. 1 C. J. p. 927, § 1.

It follows that a constructive trust arising through conspiracy, and actual or constructive fraud, is here pleaded. Does the connection recited support a single cause of action?

Mrs. Ellis illegally took over the property and business of her insane husband; Mr. McKinlay was a party to that wrong and guided her to Bancroft who, acting for the bank, drew a will disposing of it; Mr. McKinlay and the bank became and acted as executors and trustees under that testament; Bancroft and Maude Keller witnessed the will and helped secure its probate; that probate was procured and the estate settled and disposed of by all of these people without notice to plaintiff and without his consent or appearance; the bank and McKinlay paid $2,900 out of that estate, of which amount $2,000 was divided equally between themselves; Mrs. McKinlay took and still holds her husband's share of the last named amount; Mr. McKinlay and the bank, for a mere nominal consideration, conveyed one of plaintiff's ranches to Maude Keller who still holds it; Mr. McKinlay procured from plaintiff the deed to the Steamboat Springs home which the grantee still holds and Mrs. McKinlay and Maude Keller moved into the home, took charge of it and the minors, and ousted plaintiff. All these acts were done by all these persons with full knowledge of plaintiff's insanity, of the method by which his property was taken from him, of its disposition by will as the property of another, and of its distribution through an illegal probate and settlement; and each act was done by each with the consent of the others and with their assistance, so far as the same was necessary to consummate it.

It must be borne in mind that as yet no opportunity has been presented to deny these charges, nor to offer evidence in support of them, nor for the courts to pass upon them. They are simply assumed for the purpose of deciding the law question before us. So assumed they form a single and connected story of the illegal seizure, administration and distribution (by conspiracy and through actual or constructive fraud) of the estate of an insane man. The recital is that of the violation of a single and primary right by the perpetration of a single wrong made up of many ramifications. Hence it sets up a single cause of action for accounting and return.

The judgment is reversed and the cause remanded with directions to overrule the motions and proceed in harmony herewith.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE WHITFORD and MR. JUSTICE WALKER concur.