No. 13,449.

OTIS AND COMPANY *v.* GRIMES.
(48 P. [2d] 788)

Decided July 22, 1935.

Messrs. LEWIS & GRANT, Mr. IRVING HALE, JR., for plaintiff in error.

Mr. MAX P. ZALL, Mr. IRVING GRIMES, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE BUTLER delivered the opinion of the court.

BEN Grimes sued Otis and Company, stock and bond brokers, for damages, alleging that in December, 1927, the defendant induced the plaintiff to purchase, for $15,400, one thousand shares of Class B stock in the Allison Drug Stores Corporation by falsely representing that the corporation then was earning $2 per share on that stock. The jury found for the plaintiff, a motion for a new trial was denied, and judgment for $21,560, which included interest, was entered against the defendant, who seeks a reversal of the judgment.

The findings of the jury, based upon conflicting evidence, established the fact that such representation was made and that the plaintiff purchased the stock in reliance thereon. The defendant contends, however, that there was no evidence indicating that the representation was false at the time it was made; or that the representa-

tion was made by defendant with knowledge of its falsity or in culpable ignorance as to its truth; or that the plaintiff suffered any damage. The defendant also insists that interest should not have been included in the damages awarded, and that in other respects the verdict and judgment are excessive.

1. We are not favorably impressed with the defendant's contention that there was no evidence establishing the falsity of the representation. We shall not encumber the opinion by detailing the evidence on this point. It will suffice to say that the record discloses ample evidence to justify a finding that the representation was false.

2. The representation was made by one Fitzsimmons, acting for and in behalf of the defendant. It is not claimed that he had actual knowledge of the falsity of the representation. But such actual knowledge is not required; it is sufficient if he made the representation in reckless disregard of its truth or falsity, *Carlson v. Akeyson,* 65 Colo. 35, 172 Pac. 1058; or with reckless ignorance of its truth or falsity, *Robbins v. Nelsen,* 70 Colo. 504, 202 Pac. 707; or made it recklessly, careless whether it be true or false, 12 R. C. L., p. 332.

In *Sellar v. Clelland,* 2 Colo. 532, 544, it is said: "In regard to representations generally, I conceive it to be necessary for the party relying on the representations to show not only that they are false, but that the party making the same knew them to be false. But when one has made a representation positively, or professing to speak as of his own knowledge on the subject, the intentional falsehood is disclosed, and the intention to deceive is also inferred, or at all events, this is so when the matters falsely represented are peculiarly within the knowledge of the party making them, and are not known to the party to whom they are made. In such a case, the proof would seem to be complete when it was shown that the defendants made the representations; that they were made to induce plaintiffs to enter into the contract; that, relying upon the same, they did enter into the contract; that the

representations were false; that the plaintiffs sustained damage, and that such damage was occasioned by reason of the falsity of such representations."

That case has been cited with approval many times by this court and our Court of Appeals. And see *Lahay v. City National Bank*, 15 Colo. 339, 25 Pac. 704; *Connell v. El Paso G. M. & M. Co.*, 33 Colo. 30, 78 Pac. 677.

In 12 R. C. L., p. 337, the law is stated in these words: "If one asserts that a thing is true within his personal knowledge, or makes a statement as of his own knowledge, or makes such an absolute, unqualified and positive statement as implies knowledge on his part, when in fact he has no knowledge whether his assertion is true or false, and his statement proves to be false, he is as culpable as if he had wilfully asserted that to be true which he absolutely knew to be false, and is equally guilty of fraud."

At pages 339 and 340 of the same work we find this: "A statement made as of one's own knowledge, or so positively as to imply knowledge on his part, not only includes a representation that the fact is as stated, but also the further representation that the maker knows it to be so, and necessarily implies a belief on his part that it is true. Moreover, a representation recklessly made, without knowledge of its truth, cannot be a statement honestly believed, but, on the contrary, is regarded as a false statement knowingly made. If the maker of a statement does not know it to be true, he must ordinarily be deemed to know that he does not; and if he knowingly states what is untrue, then in putting his statement in such form as to amount to an assertion that he has knowledge of its truth, he is guilty of an intentional falsehood."

In *Ultramares Corporation v. Touche*, 255 N. Y. 170, 174 N. E. 441, Mr. Chief Judge Cardozo said that "Fraud includes the pretense of knowledge when knowledge there is none." In *Cooper v. Schlesinger*, 111 U. S. 148, 4 Sup. Ct. 360, the court said that "the jury were

properly instructed, that a statement recklessly made, without knowledge of its truth, was a false statement knowingly made, within the settled rule.''

In *Messerli v. Bantrup* (Mo. App.), 216 S. W. 825, the court said: ''If one asserts a material fact as of his own knowledge, and not as a mere matter of opinion, knowing at the time he has no such knowledge, and does this for the purpose of inducing another to act, and thereby induces the latter to act upon it to his injury and loss, then such assertion is the same as if it were known to be untrue when made.''

In *Schlechter v. Felton,* 134 Minn. 143, 158 N. W. 813, the court held (quoting the syllabus) : ''Where a person makes a false representation of a material fact, susceptible of knowledge and relating to a matter in which he has an interest, and as to which he may be expected to have knowledge, and makes such statement unqualifiedly and as of his own knowledge, and with intent to induce action, the statement constitutes a legal fraud, and, after it has been acted on by another to his damage, the person making it cannot be heard to say that he honestly believed that the statement he made was true. Such honest belief is not a defense to an action for fraud.''

So much for the law on the subject. Now to apply the law to the facts.

The defendant claims that it made the representation in good faith and in reliance upon information obtained from what it believed to be reliable sources. It refers, first, to an article appearing in the Wall Street Journal of date December 8, 1927. The article stated that the ''estimated'' net sales of the corporation in 1927 were $2,200,000, ''indicating'' a net profit of $300,000, equal to ''about $2 a share'' on the class B stock; that the sales in the first seven months of 1927 made a net profit of $141,159; that due to holiday business, earnings in the last five months of a year ''usually'' exceed the first seven months; that the sales in 1926 made a net profit of $1.43 on class B stock; that the stores have shown a satisfac-

tory growth and are "expected" to increase sales and show a larger profit. The other sources of information upon which the defendant says it relied is a financial bulletin issued December 7, 1927, by Dow, Jones & Co., and a letter written December 6, 1927, by Baker, Simonds & Co. The bulletin contains the same information as the article in the Wall Street Journal, and the letter gives no additional information. The article, bulletin and letter, which the defendant, in its brief, admits contained the only information then accessible, would justify the defendant in giving to the plaintiff an *estimate* of the profits that the corporation *probably* would earn during 1927, and an opinion concerning the desirability of purchasing its stock. But the verdict establishes the fact that the defendant did not confine itself to estimate, probability and opinion, but made to the plaintiff the positive representation that the corporation was earning $2 on Class B stock. There was nothing to justify such a representation. That it was false and was made in reckless disregard of the truth, for the purpose of inducing the plaintiff to purchase the stock, and that the plaintiff bought the stock in reliance thereon, is established by the jury's verdict, and the verdict is supported by the evidence.

3. It is objected that the plaintiff suffered no damage, because the price he paid was the price at which the stock then was selling on the Curb Stock Exchange, and that sometime after the stock was purchased, stock of the corporation was sold on that exchange at a higher price than the plaintiff paid for it.

The price at which the stock was sold on the exchange was some evidence of value. *Continental Divide Min. Inv. Co. v. Bliley,* 23 Colo. 160, 165, 46 Pac. 633. But it was not conclusive evidence thereof. Various considerations fix the stock market quotations. For example, the assets and earnings of the corporation are considered, and sometimes stock manipulation, taken in connection therewith and occasionally independent thereof, exercises an important influence upon stock market quota-

tions. In seeking an investment, a person may prefer stock in a corporation that actually is making a certain net profit to stock quoted on the exchange at the same price, but whose earnings are less or not definitely known; he may, and naturally would, feel safer in doing so. The quoted price of one may be due to solid worth; that of the other, to manipulation by speculators. The fact that the stock was quoted on the exchange at the price the plaintiff paid for it, or that at one time thereafter it was sold at a higher price, does not disentitle the plaintiff to damages. He bought the stock on the positive representation that it then was earning $2 per share, and that representation was false.

On the question of the measure of damages the authorities are not in harmony. According to one view, if the property received would have been more valuable had the representation been true, the measure of damages is the difference between the actual value of the property at the time of the purchase and what its value would have been had the representation been true. 12 R. C. L., p. 452. In Note, 57 A. L. R. 1143, it is said that this rule is sustained by "the greater weight of authority." According to another view, the measure of damages is the difference between the actual value of the property at the date of the sale and the price paid for it. 12 R. C. L., p. 453. This court has held both ways. In *Otis & Co. v. Teal*, 74 Colo. 336, 221 Pac. 884, the trial court instructed the jury that the measure of damages was the difference between the amount paid for the stock and its actual value. Under facts differing in some respects from those in the present case, the court, in department, held that the instruction "was fair to defendant" and was not erroneous, citing an authority that is not applicable to the facts now before us. In *Nielsen v. Hansford*, 78 Colo. 456, 242 Pac. 677, the court, in department, held that the measure of damages was the difference between the actual value of the stock and its value if the representation had been true. In *Crawford v. Melvin*, 79 Colo. 414, 246 Pac. 283, de-

cided by the court in department, we held that there can be no recovery unless the stock was of less value than the plaintiff had a right to suppose it to be at the time of the purchase, according to the representations made by the seller; which is but another way of applying the rule announced in the Nielsen case. In *Chandler v. Ziegler*, 88 Colo. 1, 291 Pac. 822, decided by the court en banc, we adhered to the rule announced in the Nielsen case. *Keeney v. Angell*, 92 Colo. 213, 19 P. (2d) 215, was decided in department. It was held without discussion or any reference to previous cases, that an instruction that the measure of damages was the difference between the value of what the plaintiff parted with and the value of what he got was correct; and that case was followed without discussion in *North American Savings and Loan Association v. Phillips*, 94 Colo. 554, 31 P. (2d) 492, which also was decided in department.

It is desirable at this time to select definitely the rule that seems to us to be the more reasonable one and to announce it, so as to do away with the uncertainty that exists in this jurisdiction with reference to the law on the subject.

We believe that the better reason and the weight of authority support the rule that the measure of damages is the difference between the actual value of the property and what its value would have been had the representation been true.

The evidence supports the finding of the jury that the plaintiff suffered damage.

3. The trial court instructed the jury that the measure of damages is the difference between the actual value of the stock when the plaintiff bought it and the price the plaintiff paid for it, with interest at the rate of eight per cent per annum from date of payment. The first part of the instruction, though approved in the cases in 74, 92 and 94 Colorado, supra, is not in harmony with the views expressed in this opinion, but no objection was or is made thereto. The latter part of the instruction is

challenged on the ground that interest is not allowable in such an action. We have so held in *Clark v. Giacomini,* 85 Colo. 530, 277 Pac. 306, and *Keeney v. Angell,* supra. But defendant is in no position to urge the objection, for before the instruction was given defendant made no objection thereto, as required by our rule No. 7. However, as the case must be retried on the question of damages— a matter about to be discussed—we call attention to these matters so that at the retrial the correct instructions may be given.

4. In its motion for a new trial and in its assignment of errors the defendant objected that the verdict was excessive.

This was not a suit to recover the purchase price of the stock upon rescission of the contract, but an action for damages caused by fraud and deceit. And yet the jury awarded damages in the sum of $21,560, which represented the full purchase price, plus interest thereon. We already have discussed the instruction concerning interest. To find such a verdict the jury must have found that the stock was utterly worthless at the time it was purchased in December, 1927. There was no evidence to sustain such a finding. The plaintiff's evidence was to the effect that the stock was not earning $2 per share, as represented, but to conclude therefrom that the stock had no value whatever is not justifiable. During the first six months of 1927 the stock earned a net profit of 89 cents per share. On June 30, 1927, the net worth of the corporation was $1,165,000. On June 30, 1928, it was $977,718. Apparently there was no loss in the first half of 1928; on the contrary, there appears to have been a profit of $22,768; from which the plaintiff's expert witness concluded that the decrease occurred sometime in the last half of 1927—exactly when, he could not say. That would show a decrease in the actual value of the stock, but it by no means indicates that the stock was wholly worthless. And so far as sales on the exchange are any indication of value, it already has been noted that some sales on the

exchange after the plaintiff bought the stock were at a higher price than plaintiff paid.

The verdict and judgment are so grossly excessive as to require a reversal of the judgment.

The judgment, so far as it relates to the amount of damages, is reversed, and the cause is remanded for a new trial to determine only the amount of damages sustained by the plaintiff. In other respects the judgment is affirmed.

Mr. Justice Burke, Mr. Justice Hilliard, Mr. Justice Holland and Mr. Justice Young concur.