No. 19,791.

Wendell W. Shows, et al., *v.* Silver Shield
Mining and Milling Co.
(375 P. [2d] 522)

Decided October 29, 1962.

Mr. H. EARL MOYER, Mr. EDWARD B. TOWEY, for plaintiffs in error.

Mr. JAMES H. HEYER, Messrs. LAW, NAGEL AND CLARK, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THIS is an action by a corporation against numerous defendants for damages resulting from an alleged conspiracy to gain control of the management of the corporation and the resulting wrongful deprivation of its property. The parties are here in the reverse order in which they appeared in the trial court and will be referred to as they there appeared or by name.

Plaintiff, the Silver Shield Mining and Milling Company, is a corporation organized and existing under the laws of the State of Utah. Defendant, Utaco Uranium, Incorporated, is a corporation organized and existing under the laws of Nevada. Defendant, D. E. Kivett, is the president and a director of Utaco Uranium, Inc. Defendants, Wendell W. Shows, Fred A. Nutting, Jr., and Garrett G. Bickford, are former directors of the plaintiff corporation, having served in such capacity from June 1957 until January 1958.

In its amended complaint plaintiff alleged three claims for relief, praying for judgment against each of the defendants jointly and severally. In the first claim

plaintiff alleged in pertinent part as follows: That all of the defendants conspired together to gain control of the management of the plaintiff in order to convert its property to the benefit of themselves and other third persons; that pursuant to plan defendants Shows, Bickford, Nutting and one Yeager became directors of plaintiff during June 1957 and thereafter turned over the direction of plaintiffs operations to Utaco Uranium and D. E. Kivett; that plaintiff was at the time in an insolvent financial position; that Utaco Uranium was a lessee of plaintiffs' mill at Ouray, Colorado, under a lease dated February 26, 1956, and Utaco Uranium had failed to pay rentals due plaintiff amounting to "many thousands of dollars"; and, that defendants Shows, Bickford, Nutting and Yeager, pursuant to their conspiracy omitted to collect rentals and caused the existing lease to be so amended as to deprive plaintiff of any benefit therefrom during the remaining term of the lease. Plaintiff accordingly prayed for $61,985.00 as actual damages and $25,000.00 exemplary damages against the defendants jointly and severally.

In its second claim plaintiff alleged as follows: That pursuant to the aforementioned conspiracy the defendants Shows, Bickford, Nutting and Yeager, after becoming directors of plaintiff, issued 465,152 shares of plaintiff's treasury stock to themselves, Kivett and other persons; that said stock was issued for certain worthless oil interests; and, that the market value of said stock on the date of issue was $46,515.00. Plaintiff accordingly prayed for $46,515.00 as actual damages and $10,000.00 exemplary damages against the defendants jointly and severally.

In its third claim plaintiff alleged: That pursuant to the aforementioned conspiracy defendants Shows, Bickford, Nutting and Yeager, as a majority of the board of directors of plaintiff, levied an assessment of $20,203.84 against the common stock of plaintiff; that the defendant directors thereafter rescinded the assess-

ment but, pursuant to the conspiracy, turned the assessment moneys over to defendant Kivett; and, that said moneys were not returned to plaintiff's stockholders or to plaintiff. Plaintiff accordingly prayed for $20,203.00 as actual damages and $10,000.00 exemplary damages jointly and severally against each defendant together with a body judgment.

In their answer defendants generally denied the allegations of the complaint and alleged a number of affirmative defenses including laches, waiver and estoppel.

Trial was to a jury which heard lengthy testimony on behalf of all parties. It then returned verdicts upon which the following judgments were accordingly entered; (1) On plaintiff's first claim, judgment for plaintiff against defendants Shows, Bickford, Nutting, Kivett and Utaco Uranium jointly and severally, for $49,740.00 actual damages and $35,000.00 exemplary damages; (2) On the second claim, judgment for plaintiff against defendants Shows, Bickford, Nutting and Kivett, jointly and severally, for $20,135.00 actual damages and $10,000.00 exemplary damages; (3) On plaintiff's third claim, judgment against defendants Shows, Bickford, Nutting and Kivett, jointly and severally, for $20,203.34 actual damages and $20,000.00 exemplary damages. Judgment was not entered against Yeager on any of the plaintiff's claims and Yeager, accordingly, is not a party to this writ of error.

Motion for a new trial was denied. Thereafter the court, with the consent of all parties, ordered a partial remittitur of the judgment of $35,000.00 exemplary damages on plaintiff's first claim to $25,000.00, and a partial remittitur of the judgment of $20,000.00 exemplary damages on plaintiff's third claim to $10,000.00.

Defendants are here by writ of error and urge numerous grounds for reversal. For reasons hereafter mentioned, however, we will consider in detail only two grounds which we summarize as follows: (1) the evidence was insufficient as a matter of law to support a

case of conspiracy; (2) the verdicts are excessive and disproportionate to any damages which might have been sustained by plaintiff.

In considering defendants' first ground for reversal, we note that the court instructed the jury to the effect that any person who enters into an unlawful conspiracy is in law a party to every act previously or subsequently done by any of the conspirators in pursuance of the conspiracy. In their brief defendants, citing *Ellis v. Colorado National Bank, et al.,* 84 Colo. 266, 269 Pac. 997 (1928), and *Western Homes, Inc., et al., v. District Court of the City and County of Denver et al.,* 133 Colo. 304, 296 P. (2d) 460 (1956), concede that such an instruction is proper in a case where there is sufficient evidence of a conspiracy. They argue, however, that in the instant case there is insufficient evidence from which it can be inferred that the defendants, who had verdicts rendered against them, conspired to deprive plaintiff of rentals from its mill, to transfer treasury stock for worthless oil interests, to misappropriate the $20,203.84 received from the assessment, or to mismanage.

Suffice it to say that a review of the record and exhibits before us reveals that there was ample evidence to justify the jury's verdict. Frequently conspiracy cases are not well documented because the parties to the conspiracy make every effort to conceal their unlawful association and purpose. In many cases circumstantial evidence and the credibility of the various witnesses constitute the touchstone of proof. In the instant case the jury had before it numerous exhibits and had the benefit of the various witnesses' testimony in making its determination, and we see no grounds to overturn the verdict here. In fact, the proven actions of defendant Kivett showed a well worn path of incrimination and the testimony of at least one director that checks were signed in blank and the entire operations left up to Kivett, who was not then an officer of Silver

Shield, show not only gross mismanagement but with the incriminating correspondence and other exhibits could convince any reasonable jury that defendants were acting in concert to perform the acts charged.

Defendants next urge that the verdicts are excessive and are disproportionate to any damages sustained by plaintiff. In this respect we note that plaintiff's first claim for relief was based upon the alleged conspiratorial acts of defendants whereby plaintiff's lease with Utaco Uranium was cancelled retroactively and the rentals thereunder lost, and the conspiratorial mismanagement of plaintiff by defendants. Under the lease with Utaco Uranium plaintiff was to receive rentals of $2,000.00 per month from April 1956 to March 1958, and an additional $210.00 per month as one-half of the salary for an employee of plaintiff who was to generally look after the interests of plaintiff on the leased premises. Thus under the lease the gross rental for twenty-four months was $53,040.00; of this sum Utaco Uranium had paid plaintiff $12,525.00. By the purportedly unlawful amendment to the lease plaintiff lost $40,515.00. Add to this factor the alleged conspiratorial mismanagement of plaintiff and the lack of agreed salary of the employee and the jury's award of $49,740.00 as actual damages cannot be considered excessive.

The plaintiff's second claim was based upon the issuance to Shows, Bickford and Nutting of 465,152 shares of treasury stock for worthless oil interests. The jury awarded the sum of $20,135.00 as actual damages on this claim. The evidence, however, indicates that plaintiff failed to prove that the market value of such stock was $20,135.00. Instead, the evidence indicates that the highest market value of the stock was $.03 per share, with a book value of $.09 and a face value of $.15 per share. The correct measure of value here is market value. Thus the 465,152 shares of stock had a market value of $13,954.56 at the time of the transfer. Since the evidence shows that the oil interests received

by plaintiff were worthless, then plaintiff's actual loss would have been only $13,954.56 and not the $20,135.00 awarded by the jury. See *The Continental Divide Mining Investment Company v. Bliley,* 23 Colo. 160, 46 Pac. 633 (1896); *Barkhausen v. Bulkley,* 90 Colo. 558, 11 P. (2d) 220 (1932). Although the court properly instructed the jury on this matter, the jury did not properly apply the instructions to the evidence. Accordingly this judgment must be reversed with directions.

The judgment on plaintiff's third claim was based upon the $20,203.84 collected under an assessment of plaintiff's stockholders by Shows, Bickford and Nutting and transferred to Kivett assertedly to hold and return to the stockholders. On the basis of Kivett's testimony that he returned approximately $11,000.00 to the contributing shareholders, defendants argue that the verdict of $20,203.84 was unjustified. However there is a conflict in the evidence as to whether any moneys were actually returned to the shareholders. In addition the evidence is that the defendants involved knew, or should have known, that Kivett was using at least some of the money to pay various bills both corporate and personal. The jury resolved the conflict in favor of plaintiff. The judgment on plaintiff's third claim is accordingly affirmed.

In their brief defendants raise other grounds pertaining to the admissibility of certain evidence, the propriety of certain instructions given the jury, and a ruling of the trial court on an offer of proof. We note that none of these grounds was asserted in defendants' motion for a new trial. In that motion defendants merely stated that errors of law were committed in instructing the jury and in ruling on the admissibility of evidence. Such general assignments of error do not comply with the mandate of Rule 59 (f) R.C.P. Colo., which provides that only questions presented in the motion for a new trial will be considered on review. See *Howard v. American Law Book Company,* 121 Colo. 5, 212

P. (2d) 1006 (1949); *Platte Valley Elevators Company v. Gebauer,* 127 Colo. 356, 256 P. (2d) 903 (1953); *Pinello v. Kurtz,* 138 Colo. 351, 333 P. (2d) 624 (1958).

The judgment is affirmed as to plaintiff's first and third claims. The judgment on the second claim as to the amount of $20,135.00 is reversed and the cause remanded to the trial court with directions to enter an order of partial remittitur in the amount of $7,180.44 conditioned on the plaintiff's consent thereto; and, if plaintiff refuses to consent to such remittitur then the trial court is directed to grant a new trial on the issue of actual damages as to plaintiff's second claim for relief.

MR. JUSTICE FRANTZ and MR. JUSTICE PRINGLE concur.