483 P.2d 420 (1971)
Norman STAMP and Norm "Fair-Trade" Stamp, Inc., a corporation, Plaintiffs in Error,
v.
Lester RIPPE and Betty Rippe, Defendants in Error.
No. 70-522, (Supreme Court No. 24039.)
Colorado Court of Appeals, Div. II.
January 26, 1971.
Rehearing Denied February 23, 1971.
Certiorari Denied April 19, 1971.
Craig A. Murdock, Denver, for plaintiffs in error.
Kripke, Carrigan & Dufty, P. C., Jim R. Carrigan, Denver, for defendants in error.
Selected for Official Publication.
ENOCH, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
This is an action for damages based on alleged fraud in the sale of certain farm implements. Lester and Betty Rippe, as plaintiffs below, obtained a judgment based on a favorable jury verdict. The defendants below were Norm "Fair-Trade" Stamp, Inc., a corporation engaged in selling used farm tractors and implements, and Norman Stamp, the corporation's president and general manager.
The evidence disclosed that the Rippes operated a farm near Monte Vista, Colorado. On August 16, 1966, they went to Stamp's place of business in Longmont, Colorado (a distance of about 250 miles) to buy a tractor. Stamp told the Rippes that he would sell them a used John Deere 4020 tractor for $3,500 or $3,600. He further represented that the tractor was to be a 1964 model which had seen very little use and was in good condition. At that time Stamp did not have such a tractor, but he assured the Rippes that he knew *421 where he could obtain one. At the same time, the parties discussed the purchase of a baler for $750, a windrower for $3,200 and a rake for $300. The baler was described by Stamp to be a New Holland brand, declaring it was a 1963 model in perfect shape.
After these negotiations on August 16th, the Rippes returned to Monte Vista, and arranged to borrow $8,000 from their bank to finance the entire purchase. On August 25th, Rippe called Stamp and asked if he had the John Deere 4020 tractor, the windrower, baler and rake. Stamp indicated that he had all the implements except the tractor. As a result, Rippe asked Stamp whether Stamp had a tractor which he could use until the John Deere came in, to which Stamp replied in the affirmative.
On August 27, 1966, Rippe went to Longmont to purchase the windrower, baler and rake and to borrow a tractor. Stamp agreed that Rippe could use a Ford 6000 tractor which had a 72 h. p. and 3-plow rating, until the John Deere 4020 tractor which had a 92 to 96 h. p. and 4-plow rating arrived. Relying on Stamp's representations, Rippe paid Stamp for the equipment. However, instead of writing up the Ford tractor as a loan, Stamp put it on the sales slip at the price previously quoted for the John Deere 4020 tractor, namely $3,500. Later, Stamp insisted on treating the Ford tractor as having been sold rather than loaned to Rippe.
Stamp represented that the equipment would be serviced and in good operating condition for immediate use in Rippe's fall work. However, on August 27th, the baler and Ford tractor had not been serviced by Stamp. Prior to returning to Monte Vista with the windrower and rake, the Rippes made arrangements to leave the tractor and baler for servicing and to pick them up four days later.
When Rippe returned on August 31st to pick up the tractor and baler, the tractor still had not been serviced and the baler was damaged and full of wet straw so that Rippe could not properly inspect it. In loading the tractor, Rippe discovered that one axle had been cut and rewelded. Rippe did not concern himself with this defect as he believed he was only borrowing the tractor and returned to Monte Vista with the equipment. Later, on September 8th, Rippe telephoned Stamp to inquire whether the John Deere tractor had come in yet, to which he received a negative answer. He also informed Stamp at that time that the baler had given him a lot of trouble and cost him some money, and that the Ford tractor had not performed adequately.
On October 11, 1966, having finished the immediate fall work for which the Ford tractor had been borrowed, Rippe hauled the Ford tractor back from Monte Vista to Longmont. Rippe again asked Stamp if the John Deere was in, and again received a negative answer. Rippe then asked for a refund of the money paid for the tractor, which Stamp refused. The most Stamp would agree to was to accept the Ford tractor on consignment and to sell it for Rippe. Being given no other alternative, Rippe consigned the Ford tractor for sale.
Rippe again was in need of a tractor during the month of November. When Rippe called Stamp on November 19, 1966, the Ford tractor was still in Stamp's possession and had not been sold. Since Rippe was in need of a tractor, Stamp agreed to have the Ford tractor fully serviced and put in condition according to their prior agreement. On November 26th the Rippes drove from Monte Vista to Longmont to pick up the tractor, but it still had not been serviced.
The Rippes later initiated this action for damages. The primary fraudulent misrepresentation, which precipitated the entire transaction, was Stamp's assertion that he would sell the Rippes a 1964 Model 4020 John Deere tractor in good condition with very little use for $3,500. In addition, the condition of the loaned tractor was misrepresented.
Also misrepresented were the year of manufacture and condition of the baler. Stamp represented that the year of manufacture *422 was 1963 when it actually was manufactured in 1961. Furthermore, Rippe testified that the baler broke down the first time he tried to use it.
In proof of damages, the Rippes presented evidence that the difference in value in Longmont, Colorado, on August 27, 1966, between the John Deere tractor they had bargained for and the Ford 6000 tractor they received was $2,000. They presented evidence that the baler they received was a 1961 model, not the 1963 model as promised, and that the difference in value between the 1963 baler and the 1961 baler was $400. They further presented evidence that the baler was not in good working condition as represented, and as a result, that the Rippes' hay crop lay on the ground five and one-half days while the baler was being repaired. During that time, the hay was soaked by rain. As a result, the Rippes lost $630 through loss in value of their 1966 hay crop.
In addition, the Rippes presented evidence that they incurred an expense of $680 to hire tractor work done because the Ford tractor was not in working condition as Stamp represented it to be, and it could not do the work the promised John Deere tractor would have done.
Finally, the Rippes presented evidence as to damages of $250 for two extra round trips with their truck to haul the Ford 6000 tractor between Monte Vista and Longmont because of Stamp's misrepresentations. Thus, the total compensatory damages sought were $3,960, in addition to $4,000 exemplary damages. The jury found for the plaintiffs and awarded them $3,523 compensatory damages and $3,400 exemplary damages.
Stamp now seeks a reversal of this verdict, attacking both the jury's finding as to liability and their award of damages. We have considered all the alleged errors, and find two worthy of comment; namely, that the Rippes did not accurately prove the value of the misrepresented equipment and that the court improperly instructed the jury as to the measure of damages.

I
To prove the values of the respective tractors at the time and place of purchase, the Rippes called upon a Longmont farm equipment dealer. The court accepted him as an expert on the value of farm implements without objection from Stamp. This witness testified that in his opinion, a John Deere 4020 tractor would have been worth $4,500. When asked his opinion as to the value of the Ford 6000 tractor, an objection was made on the basis that the witness had never seen the equipment and was not qualified to make a judgment. The witness was then asked what would be the highest value of a used 1963 Ford 6000 tractor in an "as is" condition at the time and place of delivery, to which the witness replied that it would be about $2,500.
To prove the difference between the actual value of the baler delivered and its represented value, the Rippes called, as a witness, the Longmont dealer franchised to sell New Holland balers. He was asked his opinion as to the difference in value between a used 1961 Model 78 New Holland baler and the closest comparable used 1963 Model New Holland baler in similar condition. Over objection, the witness responded that he could not make an exact determination without seeing the condition of the equipment but that the difference in value between the machines was approximately $400.
Stamp claims that this testimony failed to prove the actual value of the equipment delivered to the Rippes, that such testimony was incompetent and inadmissible, and that the court should have dismissed the complaint. We agree with the trial court in holding that such evidence relating to the value of the machinery presents only a question of the weight of the evidence and not competency or admissibility. Furthermore, we agree with the assertion by the Rippes that expert opinion evidence is often not perfect or exact, and to require mathematical precision in cases of this type would in effect deny a plaintiff's recovery. To *423 require an expert to have actually examined the very piece of equipment at the time and place of purchase is completely unreasonable. To do so would be tantamount to licensing fraud of this type.
Stamp relies heavily on Farmer v. Norm "Fair-Trade" Stamp, 164 Colo. 156, 433 P. 2d 490. That case was another action for damages for fraud in the sale of a hay baler against this same defendant. Stamp prevailed in that action due to the plaintiff's failure to prove the value of the machine in question at the time and place of the sale. The only evidence as to value of the machine presented by the plaintiff in that case was the amount that Stamp paid the dealer from whom he purchased it in Salina, Kansas. The Supreme Court pointed out that such evidence neglected to show the cost of transportation from Salina to Longmont, whether the price paid by Stamp was a wholesale or retail price, and what was a fair, usual "mark-up" in the trade. The Supreme Court opinion stated "* * * a qualified witness could give an opinion as to its market value." The evidence presented by the plaintiffs in this case meets the requirements set forth by the Supreme Court in Farmer v. Norm "Fair-Trade" Stamp, supra.

II
Stamp also claims that the trial court erred in instructing the jury that:
"* * * In assessing damages you may consider the difference between the actual value of the property sold and the value that the property would have had if it had actually been as represented by the defendant, the cost to the plaintiffs of hiring work done because of the failure of the equipment to operate as represented, the damage to the plaintiffs' crops because of the failure of the equipment to operate as represented and the cost of hauling the equipment in attempts to return it to the defendants because of the misrepresentations. * * *"
Stamp claims that the damages should have been limited to the difference between the value of the goods as delivered and the value as represented. This is what is generally known as the "benefit of the bargain" rule. To support this contention, Stamp cites Otis and Co. v. Grimes, 97 Colo. 219, 48 P.2d 788, and Farmer v. Norm "Fair-Trade" Stamp, supra.
We agree that the "benefit of the bargain" rule adopted by the Supreme Court in Otis and Co. v. Grimes, supra, is the proper rule to apply in fraud cases. The trial court properly instructed the jury as to this aspect in the first part of the damage instruction. Stamp claims that in further instructing the jury as to the other damages, the court also adopted the "out of pocket" rule, thereby affecting a double or overlapping recovery. The "out of pocket" rule does not allow a plaintiff to recover to the extent of the "benefit of the bargain." The former rule only allows recovery of the amount that the plaintiff is "out of pocket" by reason of the fraud, which is the difference between the real value of the misrepresented property and the amount paid by the plaintiff. However, both rules are rules of "general damages" which do not include "special damages" that are the natural or proximate result of the seller's fraud. Where the application of the "benefit of the bargain" rule will not make the plaintiff whole because he has suffered an injury not encompassed by the rule, additional damages will be allowed for expenses which nevertheless flow as a natural and ordinary consequence of the original wrong. McInnis & Co. v. Western Tractor & Equipment Co., 67 Wash.2d 965, 410 P.2d 908.
Stamp's contentions that the transportation costs were not a result of his misrepresentation and that the Rippes should merely have notified him and offered to return the tractor have no merit. One of the trips was caused by Stamp's failure to have the loaned tractor serviced and in condition for use. The other was caused by the original misrepresentation that the Rippes were to receive a John Deere 4020. Returning the *424 Ford 6000 was a natural and logical consequence in light of the understanding that it was merely being loaned to them.
Furthermore, in McInnis & Co. v. Western Tractor & Equipment Co., supra, the Supreme Court of Washington stated:
"Therefore, when, in alleviating or curing the consequence of fraud or misrepresentation, more than one course of action reasonably opens to the injured party, and the choice of action taken is reasonable under the circumstances, the person whose wrong forced the choice cannot complain that one choice rather than another was exercised."
We find the above applicable in this case.
The judgment of the trial court is affirmed.
SILVERSTEIN, C. J., and COYTE, J., concur.