**Rick A. HALL and Christopher R. Hall, David L. Hall, by their Father and next friend, Rick A. Hall, Plaintiffs-Appellants,**

v.

**Harold BORNSCHLEGEL, Marita Bornschlegel, Bruce Wadzeck and University Church of Christ, Defendants-Appellees.**

**No. 85CA0765.**

Colorado Court of Appeals,
Div. II.

June 18, 1987.

Rick A. Hall, pro se.

Jones, Meiklejohn, Kehl & Lyons, David E. Driggers, Denver, for defendants-appellees Harold Bornschlegel and Marita Bornschlegel.

Quigley & Goss, Neil Quigley, Denver, for defendants-appellees Bruce Wadzeck and University Church of Christ.

KELLY, Judge.

The plaintiffs, Rick A. Hall and his sons, Christopher R. and David L. Hall, sued Rick's former wife, Martha J. Hall-Stradley; her then husband, James Stradley; her attorney, Gerald Himelgrin; her parents, Harold and Marita Bornschlegel; Bruce Wadzeck, the minister at the University Church of Christ; and that church for damages for the intentional infliction of emotional distress, for outrageous conduct, for tortious inference with his visitation rights, and for civil conspiracy. Upon motion of the defendants Bornschlegel, Wadzeck, and University Church of Christ, a partial summary judgment dismissing them from the action was entered.

The partial summary judgment was certified under C.R.C.P. 54(b) by the trial court, and this appeal by the plaintiffs ensued. The remaining defendants are not parties to this appeal. Although the appellees do not challenge the jurisdiction of this court to entertain this appeal, we nevertheless dismiss the appeal because it was improperly certified as a final judgment under C.R.C.P. 54(b). *See Harding Glass Co. v. Jones,* 640 P.2d 1123 (Colo.1982).

The complaint and Rick Hall's affidavit in opposition to the motion for partial summary judgment show the following facts: The marriage of Rick and Martha Hall was dissolved in March 1980, and Mrs. Hall was granted custody of their two sons. Rick Hall had extensive visitation rights under the terms of an agreement which was incorporated into the dissolution decree.

Mrs. Hall subsequently married James Stradley.

In mid-July 1981, without notice to Hall, the Stradleys moved to Mauritius, an island nation in the Indian Ocean, taking the two boys with them. Seeking the location of his children, Hall telephoned his former mother-in-law, Marita Bornschlegel, who refused to reveal the children's whereabouts, although she knew of the overseas move. Instead, she referred Hall to her daughter's attorney.

The lawyer also refused to divulge the family's location unless Hall would agree to renegotiate his visitation rights. After several weeks of negotiation, Hall agreed to a curtailment of his rights in return for the boys' address. The lawyer then informed Hall that his former wife and his sons were beyond the reach of legal process in Mauritius.

Hall further alleged that, shortly after his sons had disappeared, Bruce Wadzeck, pastor of University Church of Christ, along with some unidentified church members, deliberately withheld the information from Hall about his children's whereabouts. Hall allegedly contacted Wadzeck on two separate occasions to learn where his children were. Wadzeck knew of Hall's former wife's plans but claimed that the information was privileged because it had been given to him in confidence.

In November 1982, having learned that the boys had returned to Denver, Hall telephoned his former father-in-law who also refused to tell him where the children were located. Through his own efforts, Hall ultimately learned that the Stradleys and the children were living temporarily with the Bornschlegels. Hall then filed this lawsuit, alleging the joint and several liability of the multiple defendants.

It was uncontroverted in the trial court, as it is here, that the claims for relief against these appellees rest upon the theory of civil conspiracy to inflict intentional emotional distress by tortious interference with Hall's visitation rights, and outrageous conduct. Hall himself conceded at the argument on the motion for summary judgment that the acts of outrageous conduct were committed solely by his former wife, Martha Stradley, although he also pleads the outrageous conduct of her husband, James Stradley. Relying on *Ellis v. Colorado National Bank*, 84 Colo. 266, 269 P. 997 (1928), Hall argues that these appellees became civil conspirators by virtue of their participation in the conduct of Martha Stradley.

Hall's theory is consistent with *Ellis, supra,* and also with *McGlasson v. Barger*, 163 Colo. 438, 431 P.2d 778 (1967). A civil conspiracy was defined in *McGlasson* as "a combination of two or more persons by some concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by criminal or unlawful means." The participants in such a combination are required to respond in damages for the injury done. As stated in *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937):

"Action of an individual which would cause him to be liable for damages, if acquiesced in by two or more others, and in which they co-operated, imposes on all who participated the obligation to respond in damages resulting from the consummation of the common design."

*See also Pullen v. Headberg*, 53 Colo. 502, 127 P. 954 (1912).

In ruling on the motion for summary judgment, the trial court concluded that the object of the conspiracy, namely, intentional interference with Hall's visitation rights, is not, as a matter of law, unlawful conduct. This ruling, until properly addressed in an appellate setting, became the law of the case, *Verzuh v. Rouse*, 660 P.2d 1301 (Colo.App.1982), and decided at least some of the claims against the remaining defendants. For example, if intentional interference with a parent's visitation rights is not unlawful conduct, it follows that there can be no action against the other defendants based on that claim for relief. We express no opinion on the question whether the ruling would also preclude the claims for intentional infliction of emotional distress and for outrageous conduct.

Although the decision to certify an order or a partial judgment under C.R.C.P. 54(b)

is discretionary with the trial court, its decision regarding the finality of its order is reviewable by the appellate courts. *Corporon v. Safeway Stores, Inc.*, 708 P.2d 1385 (Colo.App.1985). We find neither Colorado cases nor federal cases interpreting Fed.R.Civ.P. 54(b) which treat the dismissal of some but not all of multiple parties as those facts relate to certification under the rule.

In *Corporon, supra,* we said that, absent a specification of joint liability only, multiple defendants are potentially liable both jointly and severally. Accordingly, we ruled that the pendency of claims against remaining defendants does not operate to invalidate a C.R.C.P. 54(b) certification. Nevertheless, we conclude that this rule of *Corporon* is inapplicable here. Since the liability of co-conspirators is necessarily joint, the specification of joint liability only is not required, and an allegation of several liability as to civil conspiracy is surplusage. To this extent at least, the rationale of *Turchick & Kempter v. Hurd & Titan Construction Co.*, 674 P.2d 969 (Colo.App.1983), *rev'd on other grounds Kempter v. Hurd*, 713 P.2d 1274 (Colo. 1986), continues to have vitality as to this issue.

Accordingly, we hold that certification under C.R.C.P. 54(b) is improper if the ruling sought to be appealed disposes of one or more claims against some but not all of the parties who may be jointly, but not severally, liable, and there remains in the trial court a claim or claims against one or more of the remaining parties who, because of the certification, are not before the appellate court.

The appeal is dismissed.

SMITH and STERNBERG, JJ., concur.