Pamela J. BURAK,
Plaintiff–Appellant/Cross–Appellee,

v.

GENERAL AMERICAN LIFE INSURANCE COMPANY,
Defendant–Appellee/Cross–Appellant.

Nos. 85–1970, 85–1971.

United States Court of Appeals,
Tenth Circuit.

Jan. 12, 1988.

Rehearing Denied March 10, 1988.

Kent N. Campbell (Samuel L. Anderson, with him on the briefs) of Anderson, Sommermeyer, Wick & Dow, Fort Collins, Colo., for plaintiff-appellant/cross-appellee.

Donald M. Burkhardt (Charles H. Haines, Jr., with him on the briefs) of Grant, McHendrie, Haines and Crouse, Denver, Colo., for defendant-appellee/cross-appellant.

Before McKAY and BALDOCK, Circuit Judges, and BROWN, District Judge.[*]

McKAY, Circuit Judge.

In this nonjury case, two issues are presented on appeal: (1) whether Ronald J. Burak was covered under a company group life insurance policy when he died, and if so, (2) what amount of death benefits are payable to the beneficiary.

## I.

Ronald J. Burak began employment with Monolith Portland Cement Company (Monolith) on September 16, 1983. On October 4, 1983, Mr. Burak signed an enrollment card for coverage under a noncontributory group life insurance policy (Policy) issued to Monolith by defendant, General American Life Insurance Company. Mr. Burak named plaintiff, Pamela J. Burak, as the Policy's beneficiary. On October 27, 1983, Mr. Burak was pronounced dead at the scene of a single car collision with a bridge abutment. An autopsy revealed that Mr. Burak had suffered a nonsurvivable basilar skull fracture from the collision. The autopsy also revealed that Mr. Burak was having a myocardial infarction or "heart attack" when the collision occurred.

Plaintiff filed a claim with defendant for $42,000 in death benefits on the Policy and for an additional $42,000 in benefits pursuant to the accidental indemnity clause contained in the Policy. Defendant denied plaintiff's claim on the ground that Mr. Burak's death preceded the effective date of the Policy. Defendant also denied that the cause of death was accidental.

Plaintiff filed suit to collect the death and accidental death benefits in state district court, and defendant removed the suit to federal district court on the basis of diversity of citizenship. 28 U.S.C. § 1332 (1982). On October 12, 1984, the district court granted summary judgment for plaintiff. The district court ruled that the provision establishing the effective date of the Policy (Effective Date Provision) was ambiguous and allowed an interpretation that coverage existed at Mr. Burak's death. The court also ruled that Mr. Burak's death resulted from the accident and that plaintiff was entitled to an additional payment under the Policy's double indemnity clause.

[*] Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

Upon reconsideration, the district court amended the October 12th order by requiring the parties to litigate the benefits granted under the double indemnity clause. After hearing evidence, the district court dismissed plaintiff's double indemnity claim. Final Amended Judgment was entered on June 11, 1985, *nunc pro tunc* May 29, 1985. This judgment awarded plaintiff $42,000 in death benefits plus interest, but denied the double indemnity benefits.

Plaintiff now appeals the district court's denial of her double indemnity claim. Defendant cross-appeals the district court's summary judgment ruling that the Policy was effective at Mr. Burak's death. Because the issue of whether Mr. Burak was covered by the Policy is determinative, we need not reach the double indemnity claim.

## II.

In considering defendant's challenge of the summary judgment, we apply a *de novo* standard of review. *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *Hydro Conduit Corp. v. American–First Title & Trust Co.*, 808 F.2d 712, 714 (10th Cir.1986). Summary judgment was proper if, as a matter of law, Mr. Burak was covered under the Policy when he died. Coverage under the Policy becomes effective when the individual belongs to an eligible class, the individual completes the one-month waiting period, and the Policy is activated by the Effective Date Provision. *See* Record, vol. 1, at 15. The parties do not contest that Mr. Burak satisfied the eligibility class and waiting period criteria. The sole question then is to determine Mr. Burak's effective date under the Policy.

█ The Policy provides that its provisions are to be governed by California law. Record, vol. 1, at 37. The basic Policy is a standard form insurance contract issued by defendant. The Effective Date Provision states that "personal insurance shall be made effective on the date the employee is eligible." *Id.* at 15. The individual eligibility date could be established when an employee completed full-time work for the

required waiting period—one month—or at "the effective date of this [P]olicy, if later." *Id.*

The face of the Policy states that "[t]he first premium is due on the effective date. Future premiums are due each month on the first of the month. Policy months *after the first* [month] begin on the first of the month." *Id.* at 14 (emphasis added). Thus, it appears at first reading that Mr. Burak should have been eligible when his one-month waiting period ended on October 16th, and that his insurance should have become effective on that date; his first premium would have been due on October 16th with subsequent premiums payable on the first of each month thereafter.

However, as is true with most form contracts, a company choosing a policy may also select various endorsements that modify particular policy provisions. Monolith's Policy contains not only the standard Effective Date Provision but also an endorsement. The endorsement provides:

that the insurance of an individual shall be effective on the earlier of:

a) the first day of the policy month which coincides with the day it would otherwise be effective, or

b) the first day of the policy month which next follows the day it would otherwise be effective.

Record, vol. 1, at 16. The parties agree that "the day it would otherwise be effective" is the end of the waiting period or October 16th in Mr. Burak's case. However, the effect that this date has in establishing "the first day of the policy month," or effective date, remains in conflict.

Plaintiff asserts that the Policy could have easily been revised to incorporate the endorsement language into the Effective Date Provision. Since this was not done, plaintiff claims that the " 'original policy' and the 'endorsement' appear to be mutually effective at the same time, thereby constituting an ambiguity" that should be resolved in her favor. Plaintiff-Appellant's Reply Brief at 7; *see Beaumont–Gribin–Von Dyl Management Co. v. California Union Ins. Co.*, 63 Cal.App.3d 617, 622, 134

Cal.Rptr. 25, 27 (1976) (ambiguities are to be construed against the drafter).

Plaintiff's argument strikes upon a serious problem in the insurance industry. Insurance providers routinely issue standard policies and when those policies need to be amended, the insurer does not rewrite the appropriate provisions but merely attaches an endorsement to the standard policy. The result of this practice is that the body of the policy may offer a type of coverage that is expressly taken away by a subsequent endorsement. In addition, insurance companies frequently fail to calculate how the endorsement may affect nonreferenced sections of the policy.

Despite their great potential for misleading consumers, the use of endorsements is allowed and accepted. Moreover, under California law, an endorsement to a policy becomes part of the policy and "if there is conflict in meaning between an endorsement and the body of the policy, the endorsement controls." *Continental Casualty Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 431, 296 P.2d 801, 805 (1956); *Southwestern Funding Corp. v. Motors Ins. Corp.*, 59 Cal.2d 91, 93–95, 28 Cal.Rptr. 161, 162, 378 P.2d 361, 362 (1963). Therefore, based upon California law, an endorsement which conflicts or varies from the standard policy does not create an ambiguity in terms, but must instead control. Accordingly, the effective date of Mr. Burak's Policy is governed primarily by the language of the Policy's endorsement, and to the degree that the endorsement conflicts with or varies from the standard Policy, the endorsement must stand. The terms of the endorsement provide the key to whether Mr. Burak was covered by the Policy at the time of his death.

■■■ Defendant contends that the endorsement means that, if the policy holder completes his one-month waiting period on the first day of a calendar month, the insurance coverage begins that day. If, however, he completes his waiting period on the second day of the month or on any day thereafter in the month, he must wait until the first day of the next calendar month before coverage begins. Since Mr. Burak

ended his waiting period on October 16, 1983, a day which does not coincide with the first day of the month, subparagraph (a) would not apply. Thus, Mr. Burak's effective date would be controlled by subparagraph (b) and would be the "first day of the policy month which next follows," or November 1, 1983.

Plaintiff maintains that the endorsement can be interpreted in at least two other ways. First, plaintiff argues that the policy month may not be the same as the calendar month, but could be interpreted to mean the day the waiting period ended, or October 16, 1983. Thus, under this interpretation of subparagraph (a), the "first day of the policy month" and the "day it would otherwise be effective" would coincide on October 16, 1983, and make the policy effective. Second, even if the policy month is synonymous with a calendar month, plaintiff suggests that subparagraph (a) can also be understood to mean that the Policy is effective on the first day of the particular month in which the individual satisfies his waiting period. Thus, since the first day of the policy month or calendar month that coincided with October 16, 1983, was October 1, 1983, the Policy could have become effective the first day of October.

Plaintiff also contends that subparagraph (b) "can be read as either November 1, 1983 (the first day of the policy month which next follows the day it would be effective), or as October 17, 1983 (if 'policy month' is not read to be the same as a calendar month ...)." Plaintiff–Appellant's Reply Brief at 14. Therefore, under either of the alternative interpretations which plaintiff proposes, subparagraph (a) would always establish an effective date before that established by subparagraph (b).

Having reviewed plaintiff's and defendant's interpretations of the endorsement, the Policy, and the record; we find that plaintiff's interpretations cannot withstand detailed scrutiny. Plaintiff's first interpretation requires the policy months to be other than calendar months, when the face of the Policy expressly provides that policy

months are to "begin on the first of the month." Record, vol. 1, at 37. Plaintiff's second interpretation inappropriately uses the word "coincide" to modify policy month rather than "the first day of the policy month." Even if we did not find that plaintiff's interpretations strained the language of the endorsement, they do not give effect to each of the subparagraphs. Thus, plaintiff's interpretations of the endorsement effectively read the "earlier of" language and subparagraph (b) out of the contract.

While California law requires us to interpret the policy to indemnify the plaintiff's losses if "semantically permissible," *Crane v. State Farm Fire and Casualty Co.*, 5 Cal.3d 112, 115, 95 Cal.Rptr. 513, 514, 485 P.2d 1129, 1130 (1971), we are not allowed to achieve this result by writing out parts of the contract. We are bound to give each subsection effect if possible. *Holz Rubber Co. v. American Star Ins. Co.*, 14 Cal.3d 45, 56, 120 Cal.Rptr. 415, 421, 533 P.2d 1055, 1061 (1975) ("An insurance policy, like any other contract, must be construed as an entirety, with each clause lending meaning to the other."); *Jurd v. Pacific Indemnity Co.*, 57 Cal.2d 699, 704, 21 Cal. Rptr. 793, 795, 371 P.2d 569, 571 (1962); *see* Cal.Civ.Code, § 1641 (Deering 1987) ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *see also Harborside Refrigerated Services, Inc. v. IARW Ins. Co.*, 759 F.2d 829, 830 (11th Cir.1985) ("If possible, the court must adopt a construction which will give effect to the total instrument and its provisions."). The endorsement is poorly written and obscure. However, because plaintiff's interpretations of the endorsement fail to give the "earlier of" language and subparagraph (b) effect, we reject plaintiff's interpretations in favor of the one proposed by defendant which does give effect to the entire endorsement. We conclude that summary

judgment was improperly entered against defendant. Mr. Burak was not covered under the Policy and, accordingly, plaintiff's appeal as to her right to double indemnity benefits is dismissed.*

REVERSED and REMANDED to the district court with directions to vacate its amended judgment and enter judgment in favor of the defendant.

---

* We note that the plaintiff makes reference to a public policy argument that insurance companies should not be allowed to hold out coverage in the policy and then limit the coverage through exceptions or endorsements that are hidden in the fine print of the contract. Plaintiffs–Appellant's Reply Brief at 11. The record

on appeal does not indicate that the district court was asked to make a factual determination of whether the endorsement at issue was inconspicuous so as to mislead consumers and thus violate public policy. Accordingly, we do not reach the issue.