**THE POST OFFICE, Plaintiff–Appellee,**

v.

**PORTEC, INC., a Delaware Corporation, Defendant–Appellant.**

Nos. 88–2836, 89–1034.

United States Court of Appeals, Tenth Circuit.

Aug. 27, 1990.

---

804

Bruce A. Menk of Hall & Evans, Denver, Colo. (Alan Epstein of Hall & Evans, Denver, Colo., and Brett A. Valiquet of Hill, Van Santen, Steadman & Simpson, Chicago, Ill., with him on the briefs), for defendant-appellant.

Alan G. Carlson (John A. Clifford and Daniel W. McDonald with him on the brief), of Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, Minn., for plaintiff-appellee.

Before McKAY, ANDERSON, and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

This case involves a challenge to a jury verdict in favor of plaintiff in a misappropriation of trade secrets case.

## I. Facts

The Post Office, a United Kingdom corporation that delivers mail throughout the U.K., developed a unique package-handling chute in the 1970's. The Post Office licensed others to manufacture the chutes under the trademark Safeglide®. Portec, Inc. negotiated with the Post Office for a license to manufacture and sell Safeglide® chutes in the United States. The negotiations, however, failed to produce an agreement. During the negotiations, Portec learned a great deal of information regarding the chutes. After active negotiations ceased, Portec began manufacturing and selling virtually identical chutes under the name of Spiralglide.

The Post Office (plaintiff) then filed this action against Portec (defendant) asserting claims of breach of contract, misappropriation of trade secrets, breach of the duty of good faith and fair dealing, trademark infringement, fraud and deceit, false designation of origin, and violations of the plug molding statutes of California, Tennessee, and Michigan. After a jury trial, the jury returned verdicts in favor of plaintiff on its claims of misappropriation of trade secrets, breach of fiduciary duty, false designation of origin under the Lanham Act, and fraud. The jury awarded damages of $79,519.40 on the misappropriation of trade secrets and the breach of fiduciary duty claims. Although the jury found for plaintiff on the claims of false designation of origin and fraud, the jury awarded zero damages on those claims. The jury also awarded $1,500,000.00 in punitive damages. Finally, the district court entered an injunction prohibiting defendant from manufacturing and selling any nonmechanized spiral chutes for four years.

After judgment, plaintiff sought attorney fees under the Lanham Act. The district court awarded $619,315.24 in attorney fees and costs. Defendant now appeals the trial court's entry of judgment on the jury's verdict and the trial court's award of attorney fees to plaintiff. Defendant makes six challenges to the district court's judgment and to its award of attorney fees. We deal with the arguments in the order in which they were raised by defendant.

## II. Motion for Specific Identification of Trade Secrets

On July 7, 1988, defendant filed a motion requesting the district court to order plaintiff to identify each specific trade secret alleged to be misappropriated and to provide defendant with this information within forty-five days. On July 14, 1988, the district court deferred defendant's motion until trial. On the first day of trial the district court granted the motion. On the

second day of trial, defendant received a list of each specific trade secret alleged to be misappropriated. Defendant claims that it was prejudiced by not having the list until trial. Defendant argues that it was unable adequately to prepare for trial without the information requested in its motion.

■ We refuse to review an issue on appeal that was not raised before the district court. "It is well established in this circuit that 'a party may not sit idly by, watching error being committed, and then raise the claimed error on appeal without having accorded the trial court the opportunity to correct its action.'" *Chevron, U.S.A., Inc. v. Hand,* 763 F.2d 1184, 1186 (10th Cir.1985) (quoting *Gundy v. United States,* 728 F.2d 484, 488 (10th Cir.1984)). In *Gundy* we stated that "failure to raise the issue with the trial court precludes any review except for the most manifest error." *Gundy,* 728 F.2d at 488. *See also Burak v. General American Life Ins. Co.,* 836 F.2d 1287, 1291 (10th Cir.1988); *United States v. Troutman,* 814 F.2d 1428, 1444 (10th Cir.1987); *United States v. Diaz–Albertini,* 772 F.2d 654, 657 (10th Cir.1985). In order to preserve an issue for our review, we require parties to make specific objections even when merely formulating issues for trial. "The need for specific objection applies to rulings on evidence, formulation of issues for trial, arguments of counsel, submission of the case to the jury, instructing the jury and all other matters throughout the trial." *Neu v. Grant,* 548 F.2d 281, 287 (10th Cir.1977).

■ In this case, defendant had at least two opportunities to object or bring its position to the attention of the district court. Defendant could have objected on July 14, 1988, when the district court held defendant's motion in abeyance until trial. Defendant could have objected again on July 29, 1988, when the district court ordered trial to begin on August 22, 1988. It was clear on July 29, 1988, that the district court would not rule on defendant's motion until the beginning of trial and that trial would begin in approximately three weeks. Defendant also had an opportunity to explain its allegation of prejudice at trial

when the district judge granted defendant's motion.

Defendant chose not to object to the trial court's actions at any time, nor did it seek a continuance in order to respond to the information obtained. The district court was never given an opportunity to correct any possible error. Accordingly, we are precluded from reaching the issue of prejudice based on timing, raised for the first time in this court, because we find no manifest error.

### III. Tendered Jury Instruction Number Six

■ Defendant next challenges the district court's failure to submit to the jury defendant's tendered jury instruction number six. This jury instruction discussed the difference between patented and unpatented articles. At trial, defendant explained its rationale with respect to all of its tendered instructions. However, defendant did not object when the trial court failed to submit tendered jury instruction number six. Again, we hold that this failure to object precludes our review.

Federal Rule of Civil Procedure 51 specifically discusses the failure to object in this situation.

> No party may assign as error the giving *or the failure to give* an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Fed.R.Civ.P. 51 (emphasis added). Defendant did not object to the district court's failure to submit to the jury its tendered jury instruction. We are thus precluded from reviewing the issue on appeal.

### IV. Schliem Testimony

Defendant next objects to the testimony of plaintiff's expert witness, Bob Schliem, regarding the ethical standards required of licensed engineers. Mr. Schliem testified at trial that defendant had violated the ethical duties required of engineers. Mr. Schliem relied primarily on his thirty years experience in the industry. However, Mr. Schliem also testified that defendant violat-

ed specific provisions of the Code of Ethics for Engineers published by the American Society of Mechanical Engineers and the Code of Ethics of the National Society of Professional Engineers. Defendant argues that testimony from these codes presented only the standard of conduct for *licensed* engineers. Further, defendant points out that *none* of defendant's witnesses were licensed engineers. Defendant concludes that it was severely prejudiced by Mr. Schliem's testimony because it compared defendant's conduct to an inapplicable and higher standard of care.

We review a trial court's decision to admit expert witness testimony under the abuse of discretion standard. *See, e.g., Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir.1987); *LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987).

> Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the 'abuse of discretion' standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value.

*United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).

■ On appeal, defendant does not challenge the admissibility of the two professional codes themselves, although defendant objected to their admission at trial. We note that the trial court correctly admitted the codes themselves as relevant to show at least a related industry standard of conduct. The codes show how licensed engineers are required to behave. This information is relevant even if defendant employed no licensed engineers. At the very least, the codes provide some guidance in determining what conduct is appropriate for unlicensed engineers.

■ On appeal, defendant essentially challenges only the relevance of Mr. Schliem's testimony that defendant violated specific sections of the challenged codes. However, we hold that defendant waived this argument by failing to object specifically to Mr. Schliem's testimony in the trial court. Defendant objected to the admissibility of the codes, but defendant made no objection as Mr. Schliem testified that defendant violated specific provisions of the codes. Defendant made no argument regarding the use or weight to be given to Mr. Schliem's testimony. In order to urge error on appeal, defendant must object at trial. *See Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184, 1186 (10th Cir.1985). In the absence of any objection to Mr. Schliem's testimony, we hold that the admission of Mr. Schliem's testimony is beyond our review.[1]

## V. Punitive Damages

Defendant presents three separate arguments challenging the jury's award of punitive damages in this case.

### A. *Lack of Award of Actual Damages*

Defendant's first argument is that punitive damages were improper in this case because no actual damages were awarded by the jury for those claims upon which punitive damages would be appropriate. The jury was asked to answer twenty special interrogatories in order to decide this case. The jury answered that plaintiff had proven its claims of misappropriation of trade secrets, breach of fiduciary duty, false designation of origin, and fraud. Next, the jury answered that plaintiff had sustained damages with regard to defendant's misappropriation of trade secrets or breach of fiduciary duty. The jury awarded $79,519.40 in actual damages for the misappropriation of trade secrets and breach of fiduciary duty claims. On the remaining claims, the jury answered that plaintiff suffered damage; but the jury awarded nothing in actual damages. Final-

---

1. Defendant also could have requested a limiting jury instruction that the jury could use the codes and Mr. Schliem's testimony only as examples of comparable conduct and not as clear enunciations of the standard of care directly applicable to defendant.

ly, the jury awarded $1,500,000.00 in punitive damages to plaintiff.

Defendant claims that plaintiff was not entitled to recover punitive damages because the jury awarded actual damages on only the misappropriation of trade secrets and breach of fiduciary duty claims. There was no specific finding that defendant acted willfully or intentionally with regard to the misappropriation and breach of fiduciary duty claims.

■ Defendant correctly points out that in Colorado punitive damages cannot be based upon claims for which no actual damages have been awarded. *See Moe v. Avions Marcel Dassault–Breguet Aviation,* 727 F.2d 917, 935 (10th Cir.1984). Therefore, the jury could not have based its punitive damages award on the claims for false designation of origin or fraud. The only claims for which punitive damages would have been appropriate were the claims for misappropriation of trade secrets and breach of fiduciary duty.

■ Defendant argues that the misappropriation of trade secrets and breach of fiduciary duty claims cannot form the basis of the punitive damages claim because the jury made no specific finding of willful or intentional conduct as to these two claims. We hold, however, that in light of the jury instructions and the jury's answers to the special interrogatories, these two claims form an appropriate basis for a punitive damages award. The trial judge instructed the jury as follows:

> If you have found that Plaintiff has proven either its claims for misappropriation of trade secrets, breach of fiduciary duty or fraud, and that Plaintiff has proven actual damages in connection with any or all of these claims, then you may award Plaintiff reasonable punitive or exemplary damages against Defendant if you find that Plaintiff has proven beyond a reasonable doubt that Defendant's conduct amounted to fraud, malice or willful and wanton conduct.

Record, vol. 10, at 1078. This instruction clearly included both the requirement for actual damages and the requirement for willful conduct.

The jury's answers to the special interrogatories also support the punitive damages award. Interrogatory 1 asks: "Has plaintiff proven its claim of misappropriation of trade secrets against defendant: Answer YES of [sic] NO: Yes." Record, vol. 1, doc. 19, at 1. Interrogatory 2 asks: "Has plaintiff proven its claim of breach of fiduciary duty against defendant: Answer YES or NO: Yes." *Id.* The interrogatories continue:

> If you answered "YES" to Special Interrogatory 1 or 2, answer Special Interrogatory 6. Otherwise, do not answer Special Interrogatory 6.
>
> 6. Do you find that plaintiff has sustained damages as a result of defendant's misappropriation of trade secrets or breach of fiduciary duty?
>
> Answer YES or NO: Yes
>
> If you answered "YES" to Special Interrogatory 6, answer Special Interrogatory 7. Otherwise, do not answer Special Interrogatory 7.
>
> 7. What sum of money would compensate plaintiff for its actual damages for its claim of misappropriation of trade secrets or breach of fiduciary duty?
>
> Answer in dollars and cents: [$]79,-519.40.

*Id.* at 1–2.

The language preceding interrogatory 17 indicates that the jury based its award of punitive damages on its answers to interrogatories 1, 2, 6, and 7. "If you answered "YES" to Special Interrogatory 1 or 2, and, 6 and 7 *or* Special Interrogatory 5, 12 and 13, then answer Special Interrogatory 17. Otherwise, *do not* answer Special Interrogatory 17." Record, vol. 1, doc. 19, at 3. Because the jury awarded zero damages under interrogatory 13, it could not have relied on interrogatories 5, 12, and 13 as the basis for its punitive damages award. This leaves only interrogatories 1, 2, 6, and 7 as supporting punitive damages. Interrogatory 17 asks: "Do you find that plaintiff is entitled to recover punitive damages from defendant? Answer YES or NO: Yes." *Id.* Interrogatory 18 sets the puni-

tive damage amount at $1,500,000.00. *See id.* at 4.

We hold that the language of the special interrogatories, combined with the language of the jury instructions, provides a sufficient basis to uphold the jury's award of punitive damages. The jury was correctly instructed that they could not award punitive damages absent an award of actual damages based on willful conduct. Absent an objection to the instructions made at the trial by defendant, we must assume that the jury followed the instructions given to it. The jury's answers to the special interrogatories never presented any indication that the jury did not believe that defendant's conduct was willful. The only time they were specifically asked whether defendant's conduct regarding any claim was willful or intentional the jury answered "yes." *See* record, vol. 1, doc. 19 at 2. The jury was simply never asked whether defendant's conduct regarding the misappropriation of trade secrets or breach of fiduciary duty claims was willful or intentional.

■ Any ambiguity in the jury's answers arises as a result of the failure specifically to inquire in the special interrogatories about willful or intentional conduct. However, this is a problem to which defendant should have objected at trial. *Golub v. J.W. Gant & Assocs.*, 863 F.2d 1516, 1521 (11th Cir.1989). We will not review the sufficiency of the interrogatories when the defendant failed to present the problem to the trial court. We hold that the jury's award of punitive damages was based on appropriate claims.

B. *Constitutionality of Colorado Punitive Damages Statute*

■ Punitive damages were awarded in this case under Colorado's old punitive damages statute, Colo.Rev.Stat. § 13–21–102 (1973).[2] Defendant challenges the constitutionality of this statute on due process and eighth amendment excessive

fines grounds. We uphold the statute as constitutional.

In its reply brief, defendant concedes that its eighth amendment challenge that the statute allows excessive fines has been rejected by the Supreme Court. In *Browning-Ferris Indus., Inc. v. Kelco Disposal, Inc.*, —— U.S. ——, 109 S.Ct. 2909, 2913–19, 106 L.Ed.2d 219 (1989), the Supreme Court held that the eighth amendment's excessive fines clause did not apply to civil punitive damages awards.

This court has previously upheld the Colorado punitive damages statute under a due process challenge. In *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1172–73 (10th Cir. 1981), we held that the old Colorado statute did not violate the due process clauses of the federal or state constitutions. *See also Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 214–17 (Colo.1984). Defendant points to no Supreme Court action that requires us to question our prior holding supporting the Colorado statute. Thus, our prior opinion is controlling in this case, and the constitutionality of the Colorado statute is affirmed.

C. *Remittitur of Punitive Damages Award*

Defendant's final argument challenging the punitive damages award is that the award is so excessive that it should have shocked the judicial conscience and a remittitur should have been entered. We agree with defendant that the punitive damages award is excessive, and we order a remittitur to $500,000 in punitive damages.

■ Although the proper justifications for punitive damages are a matter of state law, the determination of whether a jury award of punitive damages was excessive is a matter of federal law. *See Donovan v. Penn Shipping Co., Inc.*, 429 U.S. 648, 649–50, 97 S.Ct. 835, 836–37, 51 L.Ed.2d 112 (1977). In this circuit, remittitur of a jury verdict awarding punitive damages is allowed only when "an award

**2.** The new Colorado statute limits punitive damage awards to an amount equal to the actual damages. The new statute applies to actions

accruing after 1987. *See* Colo.Rev.Stat. § 13–21–102 (1987).

[is] so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial." *Specht v. Jensen,* 832 F.2d 1516, 1528 (10th Cir.1987) (quoting *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 703 F.2d 1152, 1168 (10th Cir.1981)). *See also O'Gilvie v. International Playtex, Inc.,* 821 F.2d 1438, 1448 (10th Cir.1987). In *Malandris,* we announced the factors to be considered in determining whether an award of punitive damages is excessive.

The proper factors to be considered include: (1) the nature of the act which caused the injury; (2) the economic status of the defendant; and (3) the deterrent effect of the award on others. In addition, Colorado requires that the punitive damages bear some relation to the compensatory award.

*Malandris,* 703 F.2d at 1177 (citations omitted). We now address each of these four factors.

Although the jury concluded that the acts in this case were willful and intentional, we believe that the nature of these acts is slightly less supportive of a large punitive damages award than if the acts had involved violence or outrageous conduct. We do not in any way condone defendant's activities in this case. We simply point out that there are more reprehensible acts that more easily justify large punitive damages awards.

We next review the economic status of the defendant. Although there is some disagreement in the briefs concerning defendant's net worth, there is no testimony in the record to refute specific testimony at trial that defendant's net worth was $6,942,000.00. Therefore, the jury's punitive damages award of $1,500,000.00 amounted to 21.6 percent of defendant's net worth. We have found no cases affirming an award of punitive damages approaching 21.6 percent of the defendant's net worth. We also note that the jury's award was higher than the $795,194.00 in gross sales that defendant realized from the spiral chutes. Although the record does not contain defendant's profits from these sales, defendant's actual profits would naturally be much lower than the gross sales figure. Thus, the punitive damages award was nearly twice as high as defendant's total gross sales of the spiral chutes, and the award was substantially higher than defendant's total profits from the venture.

The deterrent effect of the award on others is difficult to measure. We simply note that an award of nearly the total gross sales would almost certainly have a major deterrent effect.

Finally, we analyze defendant's major argument that the punitive damages award must bear some relation to the compensatory damages award. Defendant points out that the ratio of punitive to actual damages in this case is approximately 19:1. Defendant cites several cases holding that ratios of less than 19:1 were excessive. We note, however, that the ratio of punitive to actual damages is merely one factor to consider in reviewing the excessiveness of an award.

In this circuit, there is no precise ratio that is excessive as a matter of law. For example, in *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1366 (10th Cir.1987), we held that a jury award involving punitive to actual damage ratios of 50,000:1 and 50:1 were not so plainly excessive as to merit reduction or reversal. *See Bradbury,* 815 F.2d at 1366. In contrast, in *Malandris* we found a ratio of 3:1 excessive for reasons other than the ratio itself. *See Malandris,* 703 F.2d at 1177. The punitive damages awarded in *Bradbury* were only $50,000.00 and $25,000.00 based on actual damages of $1.00 and $500.00 respectively. The punitive damages awarded in *Malandris* were $3,000,000.00 based on $1,030,000.00 in compensatory damages. Our holdings of excessiveness in *Malandris* and of non-excessiveness in *Bradbury* indicate that the sheer size of the punitive damages award is relevant to our determination of excessiveness and that the ratio of actual to punitive damages is only one factor in our analysis. Thus, the sheer size of the $1,500,000.00 punitive damages award in this case requires us to review the award with some skepticism.

Nevertheless, we agree with the Colorado Supreme Court that high ratios deserve close judicial scrutiny. "[A] ten-to-one ratio of punitive to compensatory damages warrants close judicial scrutiny...." *Palmer*, 684 P.2d at 220. We recently concluded that the dramatic size of a punitive damages award of $1.25 million, in conjunction with only $400.00 originally in dispute, suggested the possibility that the jury was influenced by passion and prejudice. *See Kelley v. Sears, Roebuck, and Co.*, 882 F.2d 453, 459–60 (10th Cir.1989). We believe that the possibility of passion and prejudice is also suggested in this case for the same reason.

A final fact that we find relevant in our review of the punitive damages award is the trial court's entry of a broad injunction. The fact that defendant will be prevented from manufacturing or selling spiral chutes for four years requires us to scrutinize carefully the jury's large punitive damages award.

■■■ After reviewing all of the relevant factors, we are convinced that the $1,500,000.00 punitive damages award in this case is excessive and beyond a reasonable punitive award under the Colorado statute. We find the award so excessive as to shock our judicial conscience and to raise the inference that passion, prejudice, corruption, or other improper cause invaded the jury's determination.[3] Once we have determined that a punitive damages award is excessive, we must use our judgment to determine an appropriate punitive damages amount, just as the jury used its judgment to arrive at the first figure. In our judgment, $500,000.00 is an adequate punitive damages award. The jury's verdict requires defendant to pay plaintiff an actual damage award of $79,519.40. Defendant is also required to pay plaintiff $580,639.55 in attorney fees and costs and is broadly enjoined from producing spiral chutes for four years. The punitive damage award must be paid on top of these other remedies. In lowering the award to $500,000.00, we find the defendant's net worth of only $6,942,000.00 and its total gross

sales of $795,194.00 for this product to be dominant factors. We also note that a $500,000.00 punitive damages award is more than six times the award of actual damages.

We conclude that a remittitur must be entered reducing the punitive award to $500,000.00. If plaintiff declines to accept a reduced judgment, there should be a new trial on all issues. Accordingly, we remand this portion of the case to the district court with directions to enter a remittitur order for acceptance of a judgment reducing the punitive award to $500,000.00, or otherwise for a new trial of all issues.

## VI. Attorney Fees

After trial, the district court awarded plaintiff $619,315.24 in attorney fees and expenses under section 35 of the Lanham Act, which is codified at 15 U.S.C. § 1117 (1988). Section 1117 allows the awarding of attorney fees in trademark infringement cases that are "exceptional." 15 U.S.C. § 1117(a) (1988). Defendant initially challenged the trial court's award of attorney fees and costs on four grounds. Defendant now concedes that plaintiff's motion requesting fees was timely filed. Defendant's three remaining challenges are: (1) that attorney fees were improper in this case because it is not an "exceptional case," (2) the jury did not award damages to plaintiff on its Lanham Act claim, and (3) attorney costs and fees should be apportioned to each of plaintiff's claims, and only those fees dealing with the Lanham Act violation should be awarded.

■■■ We review a grant of attorney fees under an abuse of discretion standard, although we review any statutory interpretation de novo. "A district court's award of attorney's fees generally is subject to an abuse of discretion standard of review on appeal.... Nevertheless, any statutory interpretation or other legal analysis which provides the basis for the award is reviewable *de novo.*" *Supre v. Ricketts*, 792 F.2d 958, 961 (10th Cir.1986) (citations and footnote omitted). We review the imposition of

---

**3.** We do not, however, conclude that the original liability determination was tainted.

costs for abuse of discretion. *Willner v. Budig,* 848 F.2d 1032, 1035 (10th Cir.1988).

█ This court has previously interpreted the phrase "exceptional cases" in section 1117 of the Lanham Act.

Section 1117 of Title 15 of the United States Code states that, under the Lanham Act, "[t]he court in *exceptional cases* may award reasonable attorney fees to the prevailing party." (Emphasis added). The legislative history suggests that an "exceptional case" is one in which the trademark infringement can be characterized as "malicious," "fraudulent," "deliberate," or "willful."

*VIP Foods, Inc. v. Vulcan Pet, Inc.,* 675 F.2d 1106, 1107 (10th Cir.1982) (citations omitted). *See also Takecare Corp. v. Takecare of Oklahoma, Inc.,* 889 F.2d 955, 956–57 (10th Cir.1989); *Brunswick Corp. v. Spinit Reel Co.,* 832 F.2d 513, 528 (10th Cir.1987); *Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820, 828 (7th Cir.1984); *Hindu Incense v. Meadows,* 692 F.2d 1048, 1051 (6th Cir.1982). In its answers to the special interrogatories, the jury specifically found that plaintiff had proven that defendant acted willfully and intentionally with respect to its acts involving trademark infringement or false designation of origin. Record, vol. 1, doc. 19 at 2. In its judgment, the district court specifically found that "defendant's violation of 15 U.S.C. § 1125(a) [involving false designation of origin] was willful and intentional...." Judgment, September 19, 1988, at 2. We hold that the jury's finding that defendant's actions were willful and intentional and the court's finding that defendant's actions were willful and intentional are sufficient to fit within our construction of the term "exceptional" under *VIP Foods.*

█ Defendant next contends that attorney fees in this case were inappropriate because the jury failed to award money damages on the Lanham Act claim. Defendant claims that *VIP Foods* created a requirement that actual damages be award-

ed. Defendant misunderstands the holding of *VIP Foods.* In *VIP Foods,* we simply noted that the plaintiff had suffered no ascertainable damage or loss of profits because of the defendant's use of plaintiff's trademark. We concluded that the fact that no damages were shown and the fact that the trial court found that plaintiff's conduct was not intentional indicated that this was not an exceptional case. We did not create a requirement that actual damages must be awarded in order to qualify for attorney fees.

Section 1117 allows attorney fees to be awarded "to the prevailing party." 15 U.S.C. § 1117 (1988). The jury in this case firmly concluded that plaintiff had been damaged by defendant's actions under its Lanham Act claim. Record, vol. 1, doc. 19 at 2. Thus, we hold that plaintiff was a prevailing party under the Lanham Act. *Cf. Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant,* 771 F.2d 521 (D.C.Cir. 1985) (holding that a defendant who had a lawsuit dismissed, for improper venue, without prejudice to filing in another court, was a prevailing party under the Lanham Act). The jury did not award actual damages under the Lanham Act claim apparently because it felt that plaintiff would be adequately compensated by the jury's award of actual damages under the first claim for relief. In any event, the jury concluded that plaintiff was actually damaged. We hold that a finding of actual damage, regardless of the amount awarded, is sufficient to fulfill the Lanham Act's prevailing party requirement and thus is sufficient to support an award of attorney fees under the Lanham Act.[4]

█ Finally, we address defendant's argument that attorney fees and costs should be apportioned to each claim and that only the fees and costs associated with the Lanham Act claim should be awarded. The trial court carefully considered defendant's position in making its award. The court concluded that plaintiff's claims were so

---

4. In requesting the introduction of the attorney fees' provision in the Lanham Act, the Department of Commerce stated that the decision "whether to award treble damages, attorney fees, or both, or neither" would be within the trial court's discretion. S.Rep. No. 1400, 93rd Cong., 2d Sess, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7132, 7136.

tightly bound together that the majority of the work on the Lanham Act claim would also have been necessary for the other claims. However, the trial court reduced the actual award of fees by twenty percent because it found that some of the non-Lanham Act claims involved separate issues and plaintiff was not entitled to attorney fees on the other claims. We hold that the trial court's resolution of the attorney fees issue was not an abuse of discretion. Indeed, we believe that the trial court's solution was a fair answer to the problem presented.

 We hold, however, that the trial court abused its discretion when it awarded plaintiff its full costs for the litigation. We believe that plaintiff's costs should have been decreased by twenty percent just as the attorney fees were. The percentage of attorney costs incurred to prepare for the non-Lanham Act claims was presumably similar to the percentage of attorney fees incurred to prepare for the non-Lanham Act claims. The trial court gave no reason for awarding full costs while reducing fees by twenty percent. Thus, we conclude that the trial court's award of full costs was an abuse of discretion and that plaintiff's award of costs should be reduced twenty percent. The trial court awarded plaintiff $193,378.44 in expenses. We now remand the case and direct the district court to enter an order decreasing the award of costs by twenty percent or $38,675.69, for a total expense award of $154,702.75. The award of attorney fees is to remain the same.

## VII. Injunction

Part of the judgment entered against defendant included an injunction against the manufacture or sale of spiral chutes.

[T]he defendant and each of its officers, agents, servants, employees, attorneys, successors and assigns, and all of those in active concert with any of them, are hereby enjoined for a period of four (4) years from manufacturing, selling, fulfilling outstanding quotas, offering to sell, agreeing to sell, or advertising the sale of "Spiralglide" spiral chutes, more particularly identified as spiral chutes

with the cross-sectional profile shown by Attachments 1 and 2, or any other non-mechanized spiral chutes.

Judgment, September 19, 1988, at 2. Defendant argues that the injunction was inappropriate on two grounds. First, defendant claims that the trial court failed to make specific findings concerning which trade secrets defendant violated. Thus, the injunction was too broad. Second, defendant claims that the injunction was too broad in that it prohibited the *sale* of spiral chutes in general.

 We reverse the grant or denial of an injunction only if the trial court abused its discretion or made a clear error of law. *See Chromalloy American Corp. v. Sun Chemical Corp.*, 611 F.2d 240, 244 (8th Cir.1979); *Gabrilowitz v. Newman*, 582 F.2d 100, 102 (1st Cir.1978); *Regents of Univ. of Minnesota v. National Collegiate Athletic Ass'n*, 560 F.2d 352, 365 (8th Cir. 1977); *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1358 (2d Cir.1976).

 Neither party suggests that the trial court applied the wrong legal standard or misapplied the law. Defendant simply claims that the trial court abused its discretion. We hold that the trial court's six-page Memorandum Opinion that accompanied its judgment provided a substantial basis for both the propriety and scope of the injunction. We find the court's explanation more than adequate, and thus hold there was no abuse of discretion. The court explained that the trade secrets were

so necessarily intertwined with the manufacture and sale of spiral chutes that an injunction which falls short of barring the manufacture and sale of any such chutes would fail to adequately apprise defendant as to the prohibited conduct and would create a potential window of opportunity for defendant to engage in conduct which would prevent plaintiff from being made whole for the actions of defendant in breaching the parties' confidential relationship.

Memorandum Opinion, September 19, 1988, at 4. This explanation provides an adequate basis for us to hold that the trial court did not abuse its discretion in re-

fusing to make the injunction specific to certain trade secrets. We also hold that the trial court did not abuse its discretion in prohibiting the sale of spiral chutes. Without this prohibition, enforcement problems could easily occur. Thus, we affirm the injunction precisely as issued by the district court.

### VIII. Conclusion

We AFFIRM the trial court's judgment and orders with two exceptions. We AFFIRM the judgment, provided that the plaintiff accepts a reduction in the punitive award to $500,000. Therefore, we REMAND to the district court with directions to enter a remittitur order providing that if, within a reasonable time to be fixed by the district court, the plaintiff accepts a reduction of the judgment reducing the punitive damages award to $500,000, then the judgment as so modified shall be final; otherwise, an order shall be entered granting a new trial of all issues. We REVERSE the trial court's award of full attorney expenses. We REMAND to the district court with directions to enter an order reducing the award of attorney expenses by twenty percent for a total expenses award of $154,702.75.