**ESTATE OF Robert W. KORF, Sr. and Minnie Korf, Plaintiffs, Appellees, Cross–Appellants**

v.

**A.O. SMITH HARVESTORE PRODUCTS, INC., a Delaware corporation, Defendant, Appellant, Cross–Appellee.**

Nos. 89–1135, 89–1136.

United States Court of Appeals, Tenth Circuit.

Nov. 6, 1990.

Donald E. Egan (Lee Ann Watson, Paul C. Miltonberger, Michael F. Smetana of Katten Muchin & Zavis, Chicago, Ill., Michael S. Porter, Jon M. Leader of Howe & Porter, Denver, Colo., and Francis A. Benedetti, Wray, Colo., with him on the brief), for defendant, appellant, cross-appellee.

E. Gregory Martin of Wood, Ris & Hames, Denver, Colo. (Wilfred R. Mann with him on the brief), Boulder, Colo., for plaintiffs, appellees, cross-appellants.

Before MOORE and McWILLIAMS, Circuit Judges, and BRATTON, Senior District Judge.[*]

PER CURIAM.

This action arises out of the purchase of a Harvestore agricultural feed and storage structure by Robert W. Korf, Sr. The Harvestore structure was manufactured by A.O. Smith Harvestore Products, Inc.

---

[*] The Honorable Howard C. Bratton, Senior United States District Judge for the District of New Mexico, sitting by designation.

("AOSHPI") and sold to the Korfs by Big Horn Harvestore Systems, Inc. ("Big Horn"), an independent Harvestore dealer. The Korfs claimed at trial that the structure did not function as represented and that, as a result of AOSHPI's fraudulent misrepresentations, their farming operation suffered financial losses. At trial, the jury found in favor of the Korfs and awarded them compensatory damages in the amount of $171,091.46 and punitive damages of $580,000. The claimed errors on appeal revolve around the damage award. With regard to the jury's award of compensatory damages for the alleged fraud, AOSHPI claims that the trial court erred in denying its motion for a directed verdict on the ground that the Korfs failed to prove an element of value required by Colorado law. AOSHPI challenges the punitive damage award on three grounds. AOSHPI claims: 1) that the trial court improperly instructed the jury as to punitive damages, 2) that the punitive damage award was excessive, and 3) that the punitive damage award violated AOSHPI's due process rights. The Korfs cross-appeal, alleging that the trial court erred in failing to award prejudgment interest on the compensatory damage portion of their verdict. As to the issues on direct appeal, we affirm. We reverse and remand as to the issue of prejudgment interest asserted on cross-appeal.

## I.

Prior to the death of Robert Korf, Sr., the Korf family jointly farmed land owned by Robert Korf, Sr. and his wife, Minnie Korf, as well as the acreage of their two sons, Robert, Jr. and Eldon. In 1979, a Harvestore salesman from Big Horn approached the Korfs about purchasing a Harvestore silo for storing their corn crop. Robert Korf, Sr. and his two sons viewed an AOSHPI film and were provided with brochures on the Harvestore system. AOSHPI represented in this literature that the Harvestore silo reduced or prevented oxygen from coming in contact with stored grain in the silo, thus permitting the storage of grain at a higher moisture content, for a longer time, and at a reduced storage cost. Although the equivalent storage space in the more traditional storage bins would cost only $30,000, the Korfs believed the $125,000 price of the Harvestore structure was justified by the savings it would permit. They jointly decided to purchase the silo.

Shortly after storing their 1979 fall corn crop in the Harvestore silo, the Korfs noted signs of serious spoilage in the Harvestore-stored corn due to oxygen exposure. The Korfs were forced to sell this corn at prices well below the market price. Once emptied, Big Horn resealed the entire Harvestore structure, hoping to alleviate the oxygen influx into the silo. The Korfs placed a portion of their 1982 fall corn crop in the silo. Once again the corn spoiled and after March, 1983, the Korfs were unable to sell any of the corn. They ceased using the Harvestore silo in early 1984.

At trial experts for the Korfs testified that, in fact, the Harvestore increases rather than decreases the amount of air in contact with the stored feed. These experts reviewed numerous AOSHPI internal reports and engineering studies documenting the failure of the Harvestore silo to prevent the access of oxygen into the moisture-rich grain inside. They introduced AOSHPI patents, dating as early as 1946, some of which acknowledged this defect and detailed its basic cause. Apparently, when the unloader door at the bottom of the silo is opened to remove feed, breather bags in the structure collapse, causing air to rush into the silo. This process pumps oxygen into the feed mass itself instead of merely exposing the surface grain to air, as would be the case in a conventional silo.

Further, the experts testified that because of its dark color, the Harvestore silo becomes hotter on its sunny side, creating moisture movement through the feed mass. Consequently, they concluded that it should not ever be used for dry corn storage.

## II.

AOSHPI first argues that the trial court erred in denying its motion for a directed verdict on the ground that the Korfs failed to prove a requisite element of value neces-

sary to calculate compensatory damages. We disagree and, further, find that AOSHPI waived this error.

■ In Colorado, the well-settled measure of damages for fraud is the so-called "benefit of the bargain" doctrine. *Otis & Co. v. Grimes*, 97 Colo. 219, 48 P.2d 788 (1935). In the instant case, the trial court properly applied this doctrine in instructing the jury that the measure of actual damages is the difference between the actual value of the silo at the time of the purchase and its value at that time had the representation been true. *See Otis & Co.*, 97 Colo. 219, 48 P.2d at 791. *Accord Colorado Performance Corp. v. Mariposa Assoc.*, 754 P.2d 401, 408 (Colo.App.1987).

■ In assessing the sufficiency of the evidence regarding compensatory damages, it is necessary that evidence exist as to both sides of the equation, i.e., the actual value of the property at the time of purchase and the value of the property as represented must be indicated of record. *Farmer v. Norm "Fair Trade" Stamp, Inc.*, 164 Colo. 156, 433 P.2d 490, 492–93 (1967). *Wagner v. Dan Unfug Motors, Inc.*, 35 Colo.App. 102, 529 P.2d 656, 658 (1974).

At trial, AOSHPI moved for a directed verdict after the Korfs' case-in-chief, claiming that the Korfs had failed to prove the actual value of the Harvestore at the time of purchase. The district court deemed the motion "absurd," pointing to the testimony of Minnie Korf and her two sons that the Harvestore was utterly without value (or of negative value while situated on Eldon Korfs' property) since it rotted rather than preserved corn.

■ Interestingly, AOSHPI abandoned its argument as to the lack of proof of actual value and now asserts on appeal that the Korfs failed to prove the value element on the opposite end of the equation, i.e., the value of the Harvestore as represented.[1] A review of the record clearly shows that the court, the Korfs' counsel, and even counsel for AOSHPI consistently referred throughout the trial to the purchase price as satisfying this element. Indeed, this was an imminently reasonable assumption because the purchase price is often proffered as proof of the value of a product as represented. *See Wagner*, 35 Colo.App. 102, 529 P.2d at 658 ("The purchase price was only evidence of the represented value of the vehicle ..., not its actual value"); *Farmer*, 164 Colo. 156, 433 P.2d at 492 (purchase price accepted as value of equipment as represented); *Shirley v. Merritt*, 147 Colo. 301, 364 P.2d 192, 194–95 (1961).

Regardless, AOSHPI did not advance at trial the argument now asserted. Its motions for directed verdict at the end of the Korfs' case-in-chief and at the conclusion of the presentation of all evidence failed to address this claimed error. The point is, therefore, not preserved on appeal.[2] *Neu v. Grant*, 548 F.2d 281, 286 (10th Cir.1977); *Christiansen v. Farmers Ins. Exch.*, 540 F.2d 472, 477 (10th Cir.1976).

---

1. The sufficiency of the evidence as to actual value of the Harvestore at the time of purchase is technically not before us on appeal; however, AOSHPI addresses the issue in its reply brief. We merely note that, considering the evidence in a light most favorable to the Korfs, *see Black v. Hieb's Enters., Inc.*, 805 F.2d 360, 364 (10th Cir.1986), sufficient evidence of actual value does exist to support the jury's verdict. An owner's testimony of the value of property can be probative of value under some circumstances, unless the owner's special knowledge is somehow negated by his or her own testimony. *United States v. 10,031.98 Acres of Land*, 850 F.2d 634, 637 (10th Cir.1988). Minnie Korf indicated she had little basis for assessing the Harvestore as valueless. However, the valuations by Robert Korf, Jr. and Eldon Korf, as lifelong farmers and joint operators of the farm, are probative. Additionally, evidence that the Harvestore silo increased rather than decreased spoilage, was unsuitable even for dry storage, and remained unused for the five years prior to trial further support the valuation.

2. AOSHPI also contends that the lower court erred in its instructions to the jury on compensatory damages and in its response to questions from the jury concerning the Korfs' damage claim. AOSHPI raised no objections with the trial court concerning these additional matters; they are, therefore, waived. *Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184, 1186 (10th Cir. 1985); Fed.R.Civ.P. 51.

## III.

In addition, AOSHPI requests a new trial with respect to the punitive damage award. It challenges the award on three separate grounds.

### A.

AOSHPI first claims that the trial court improperly instructed the jury as to punitive damages.[3] When reviewing claimed error as to an instruction, we must "consider all that the jury heard and, from the standpoint of the jury, decide, 'not whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it had an understanding of the issues and its duty to determine these issues.'" *Robinson v. Audi NSU Auto Union Aktiengesellschaft*, 739 F.2d 1481, 1486 (10th Cir.1984) *quoting Durflinger v. Artiles*, 727 F.2d 888, 895 (10th Cir.1984) *quoting Alloy Int'l Co. v. Hoover–NSK Bearing Co., Inc.*, 635 F.2d 1222, 1226–27 (7th Cir.1980). This determination must be made "in the light, not only of the instructions as a whole, but of the allegations of the complaint, the opening statements, the evidence, and the closing arguments." *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 682 (10th Cir.1981) *quoting Alloy Int'l*, 635 F.2d at 1226.

█ The instruction challenged as insufficient repeats almost verbatim the Colorado pattern instruction on punitive damages. *See* C.J.I.Civ. 3d 5:3 (1989) Further, the critical language in the instruction is drawn directly from the statute regarding punitive damages in effect at the time of trial. *See* Colo.Rev.Stat. 13–21–102 (1973).

Despite the virtual identity of language with both the Colorado pattern instruction and the pertinent statute, AOSHPI asserts that the court's instruction did not reflect the prevailing law in Colorado and should, accordingly, have been modified. *See Boettcher DTC Bldg. Joint Venture v. Falcon Ventures*, 762 P.2d 788, 790–91 (Colo.App.1988) (trial court must modify pattern instructions in accordance with prevailing law). As AOSHPI points out, various Colorado cases have discussed circumstances justifying an award of punitive damages and have employed varying language. *See Pizza v. Wolf Creek Ski Dev. Corp.*, 711 P.2d 671, 684 (Colo.1985) (wrongful act must be done with evil intent and purpose of injuring the plaintiff, or with such wanton and reckless disregard of rights to evidence wrongful motive); *Ress v. Rediess*, 130 Colo. 572, 278 P.2d 183, 187 (1954) ("To justify a recovery of exemplary damages, the act causing the injuries must be done with an evil intent and with the purpose of injuring the plaintiff....") *citing Gray v. Linton*, 38 Colo. 175, 88 P. 749, 750 (1906). These cases, many of which pre-date by decades the drafting of the pattern instruction, in no way suggest that the language of the pattern instruction does not adequately reflect the statutorily mandated circumstances in which punitive damages may be awarded. *See* Colo.Rev. Stat. 13–21–102 (1973). We thus reject AOSHPI's assertion of error.[4]

### B.

█ As further grounds for a new trial, AOSHPI asserts that the $580,000 punitive damage award was excessive and bears no reasonable relation to the amount of actual damages which should have been awarded. We have already concluded that the actual damage award was proper and now hold likewise as to punitive damages.

---

3. The court instructed in pertinent part:
   If you also find beyond a reasonable doubt that the injury complained of was attended by circumstances of fraud, then in addition to any actual damages, you may also award the plaintiffs a reasonable sum as exemplary damages.

4. We further reject AOSHPI's complaint as to the wording of the punitive damage section in Special Verdict Form B. AOSHPI argues that the form did not allow the jury the option of awarding actual damages even while denying punitive damages. AOSHPI lodged an objection to the verdict form, but it did so on other grounds. Even were we to accept the objection raised as sufficient to preserve this error, the record indicates that the court thoroughly and clearly explained the jury's various options in awarding damages and that no prejudice resulted. R.Vol. XX, at 1465–66.

"Although the proper justifications for punitive damages are a matter of state law, the determination of whether a jury award of punitive damages was excessive is a matter of federal law." *The Post Office v. Portec, Inc.,* 913 F.2d 802, 809 (10th Cir. 1990). An award is determined to be excessive when it "shock[s] the judicial conscience" and raises an "irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial." *Id. quoting Specht v. Jensen,* 832 F.2d 1516, 1528 (10th Cir.1987) *quoting Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 703 F.2d 1152, 1168 (10th Cir. 1981); *cf. Frick v. Abell,* 198 Colo. 508, 602 P.2d 852, 854 (1979) (similar examination mandated under Colorado law).

We are guided in our determination as to the excessiveness of a punitive damage award by viewing factors, including the nature of the act which caused the injury, the economic status of the defendant, and the deterrent effect of the award on others. *Malandris,* 703 F.2d at 1177; *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 220 (Colo.1984). In addition, Colorado courts require that the punitive damages bear some relation to the compensatory award. *Id.*

Initially, we note that the relation of the punitive to actual damages in this case bears a ratio of only slightly over 3 to 1. Although this is comfortably within a range previously found acceptable both in this circuit and in Colorado state courts, it is clear from our prior case law that the ratio is only one factor in determining the excessiveness of the punitive damage award. *Compare The Post Office v. Portec, Inc.,* 913 F.2d 802, 811 (10th Cir.1990) (punitive damage award remitted to a ratio of 6:1), and *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1366 (10th Cir.1987) (ratios of 50,000:1 and 50:1 upheld), with *Malandris,* 703 F.2d at 1177 (ratio of 3:1 found excessive). *See also Palmer,* 684 P.2d at 220 (ratio of 10:1 upheld); *Coale v. Dow Chemical Co.,* 701 P.2d 885, 889 (Colo.App.1985) (ratio of almost 7:1 upheld).

The crucial question is whether the verdict is shocking to the conscience or leads to the inescapable inference of improper jury passion or prejudice. Bearing in mind all the relevant factors, we are unconvinced that the award in the instant case was excessive.

AOSHPI's own engineering studies, tests and patent documentation, as well as complaints from farmers similarly situated to the Korfs, reveal AOSHPI's long-standing knowledge that grain stored in Harvestore silos was subject to excessive spoilage. This evidence betrays AOSHPI's blatant disregard for the potentially devastating effect to farmers such as the Korfs, who, after incurring the substantial cost for the Harvestore, lose both the use of the silo and the stored crop inside. Given these facts, it is reasonable to surmise that the jury acted to discourage such activity. An award of $580,000 in exemplary damages against AOSHPI, the seller of 70,000 Harvestore silos world-wide and "the world's largest manufacturer of automated livestock feeding systems," does not appear shocking.

### C.

Finally, AOSHPI raises a due process challenge against Colo.Rev.Stat. § 13–21–102 (1973), under which this punitive damage award was granted.[5] We recently addressed this issue in *The Post Office v. Portec, Inc.,* 913 F.2d 802 (10th Cir.1990), where we stated:

This court has previously upheld the Colorado punitive damage statute under a due process challenge. In *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 703 F.2d 1152, 1172–73 (10th Cir.1981), we held that the old Colorado statute did not violate the due process clauses of the federal or state constitutions. *See also Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 214–17 (Colo. 1984). Defendant points to no Supreme Court action that requires us to question

---

**5.** The Colorado legislature has promulgated a new punitive damage statute which limits punitive damage awards generally to an amount equal to the actual damages. The new statute applies to actions accruing after 1987. *See* Colo.Rev.Stat. § 13–21–102 (1987).

486

our prior holding supporting the Colorado statute. Thus, our prior opinion is controlling in this case, and the constitutionality of the Colorado statute is affirmed.

913 F.2d at 809.

Accordingly, we affirm the statute.

IV.

■ The Korfs raise one issue on cross-appeal. They claim that the district court erred in failing to award prejudgment interest on the compensatory damage portion of their award. We agree.

At the time of its decision the lower court was without the benefit of the Colorado Supreme Court's decision in *Mesa Sand & Gravel Col. v. Landfill, Inc.*, 776 P.2d 362 (Colo.1989). In *Mesa Sand & Gravel* the Colorado Supreme Court reviewed Colo.Rev.Stat. § 5–12–102(1)(b) (Supp.1989), under which prejudgment interest is provided to prevailing parties for money or the value of property wrongfully withheld. It would appear from the Colorado Supreme Court's analysis that victims of tortious conduct are clearly entitled to prejudgment interest under the statute. *Id.* at 364–66. *See also Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112, 1122 (Colo.1990).

Thus, establishing the date interest began to accrue is the only issue of moment remaining. The Colorado Supreme Court in *Mesa Sand & Gravel* cited a portion of the statute's legislative history indicating that prevailing parties were intended to recover prejudgment interest from the time of the wrong. 776 P.2d at 365. Under the instant facts, money was wrongfully withheld from the Korfs on the date they were fraudulently induced to undertake the obligation for the defective Harvestore silo. In accordance with the direction of the state's high court, we construe the statute liberally and conclude that the Korfs are entitled to prejudgment interest from the date they undertook the financial obligation for the Harvestore structure. *See Westfield*, 786 P.2d at 1122.

In conclusion, we AFFIRM as to all issues except the issue on cross-appeal regarding prejudgment interest. We REVERSE and REMAND as to that issue with directions that prejudgment interest be awarded from the date of the Korfs' purchase of the Harvestore structure.